This appeal involves a dispute between the holders of a promissory note and the purchasers of real estate in Baldwin County who executed the note to pay part of the purchase price and secured the note by executing a mortgage on the property. One of the holders of the note died and there arose a disagreement regarding the manner in which installments had been applied *Page 602 
on the note and the total amount then owing on the note.
This declaratory judgment action was filed by Woerner Magnolia Farms, Inc., and various members of the Woerner family; they asked the trial court to construe the various documents executed by the parties in connection with the sale by the Shermans to the Woerners, in 1976, of 1400 acres of land. At the time the suit was filed, Ernest Sherman was deceased and his interests were represented by his widow, Iris M. Sherman, and his daughter, Patricia Sherman, who had been appointed coexecutrices. The Shermans answered the complaint but admitted that a justiciable controversy existed between the parties.
The central issue presented by the proceeding concerned the amount of the indebtedness owed by Woerner to Sherman, and in order to determine that issue the court had to decide (1) the date that interest began to accrue on the debt; and (2) the appropriate application of the proceeds arising from the sale of certain timber from the property. A second issue involved the construction of a provision in the mortgage providing for a "moratorium," under the terms of which Woerner was permitted to defer payments of the annual installments due on the note. Specifically, the issue concerning the moratorium involved the repayment schedule of the installments that were deferred under the terms of the moratorium.
The trial court heard evidence on the issues, and all the parties agreed that the method of calculating the current amount due on the indebtedness was not at issue, but the parties disagreed on the date that interest was to begin to accrue.
The evidence heard by the trial court showed that in 1976 Ernest and Iris Sherman conveyed to Edward, Norman, George, and Larry Woerner[1] a 1400-acre farm located in Baldwin County. The Shermans financed $950,000 of the purchase price, as evidenced by a promissory note and a mortgage on the farm securing that note. The terms of the note called for annual installments of $97,814.63, including interest "from date" at six percent per annum, with a final installment on January 1, 1992. The Shermans and the Woerners later executed a moratorium agreement, which amended the promissory note and the mortgage so as to permit the Woerners to defer payment of not more than five installments due under the note. The agreement provided that the deferments could not be taken in successive years and that $30,000 would be paid in lieu of a full payment. The $67,814.63 balance would be deferred and would bear an interest rate of eight percent per annum. The deferred balance was to be "due and payable on January 1, of the year following payment of all other installments due under the terms of the note hereinabove referred to." Ernest Sherman died in 1986, and in connection with the preparation of his estate tax return his accountant contacted the Woerners to determine the amount owed by the Woerners on the debt. The parties then found that they disagreed concerning the date at which interest began to accrue.
The Woerners contended that a mutual mistake was made in the drafting of the promissory note and that the interest should have begun to accrue on January 1, 1977. Mrs. Sherman contended that the plain language of the note indicated that interest was to accrue "from date" of the execution of the promissory note, that is, from August 6, 1976. The trial court found that there had been a mutual mistake in the drafting and reformed the note to provide that interest would begin to accrue on January 1, 1977. During trial the construction of the moratorium became an issue and both parties agreed that the trial judge should construe that document.
After the hearing, the trial court entered the following interlocutory order, which was adopted in the final judgment: *Page 603 
"INTERLOCUTORY DECREE:
 "This matter coming on for a hearing, it was submitted upon the pleadings, testimony taken ore tenus on August 2, 1988, and argument of counsel. The plaintiffs filed a declaratory judgment action, also praying for general relief, wherein the plaintiffs sought a declaration of rights respecting the day the interest began to accrue under the terms of a promissory note and the application of monies arising out of timber sales. The plaintiffs contend that interest on the debt should have begun to accrue on January 1, 1977, and that timber sale proceeds should be applied first to principal obligation. The defendants maintain that interest began to accrue from the date of the creation of the debt, August 6, 1976, and that the timber proceeds should first be applied to accrued interest and then principal. Under consideration of the foregoing, the court is of the opinion that the following decree is due to be entered.
"FINDINGS OF FACT:
 "A. The individual plaintiffs entered into a contract to purchase from Ernest Sherman and Iris Sherman approximately fourteen hundred (1,400) acres for ONE MILLION ($1,000,000.00) DOLLARS on July 5, 1976. (Plaintiffs' exhibit 1.) The purchase contract stated that FIVE THOUSAND ($5,000.00) DOLLARS would be paid down and the balance paid in fifteen (15) annual installments beginning January 1, 1978, at 6% per annum, with interest to begin January 1, 1977.
 "B. The transaction was closed in the Shermans' home on August 6, 1976, with the execution of a promissory note (Plaintiffs' exhibit 4), an addendum agreement (Plaintiffs' exhibit 6), a real estate mortgage (Plaintiffs' exhibit 5), and a warranty deed (Plaintiffs' exhibit 2).
 "C. Subsequent to the closing and during the course of several years, various written agreements were entered into by the sellers and the purchasers or their assigns (Plaintiffs' exhibits 9, 10 and defendants' exhibit 1).
 "D. The amortization schedule given to the purchasers at the closing (Plaintiffs' exhibit 7) shows level payments over a fifteen (15) year period and does not disclose, in the first year's payment, the interest that would have accrued from August 6, 1976, to the date of the first payment. The schedule assumes interest began to accrue January 1, 1977.
 "E. Neither Ernest Sherman, during his lifetime, nor Iris Sherman made any demand upon the purchasers or their assigns for the interest from August 6, 1976, to January 1, 1977, a period of one hundred forty-two (142) days [sic], until the CPA's preparing Mr. Sherman's estate tax return raised the question.
 "F. The attorney who prepared the closing documents failed to insert a provision into the promissory note and mortgage signed by the individual defendants concerning the date that interest would begin to accrue so that the closing documents would conform to the contract for sale.
 "G. At the closing, neither the sellers nor the purchasers discussed the issue of the beginning date for the accrual of interest on the unpaid balance of the purchase price.
"CONCLUSIONS OF LAW:
 "I. The court finds that neither the promissory note nor the agreement concerning the timber cutting are ambiguous.
 "II. The court finds that the omission of the beginning date for the accrual of interest on the unpaid balance of the purchase price was a scrivener's error and that the closing documents did not express the true intention of the parties as set forth in the contract of sale. Further, the court finds that the mistake was mutual and that the plaintiffs are entitled to relief under the general prayer for relief (see, McCaskill v. Toole, 218 Ala. 523, 119 So. 214 (1928); Ballentine v. Bradley, 238 Ala. 446, 191 So. 618 (1939)). *Page 604 
 "III. The timber agreement dated March 27, 1981 (Defendants' exhibit 1), does not state that the timber proceeds would be applied first to principal and then to interest. The court also concludes that no estoppel was created when the Shermans signed the amortization schedule sent to them by one of the individual defendants (Plaintiffs' exhibit 16).
 "IV. That said timber agreement provides that one half of the timber sales proceeds shall be paid to the purchasers 'in addition to all other amounts that may be due under the terms of said mortgage, except that the payment, when made, shall be credited to the last maturing installment. . . .' The court finds that the word 'moratorium' which appears on page 2 of said agreement and which was inserted by E.E. Woerner is not sufficient to allow the court to determine that the timber proceeds should be applied first to principal and then to interest. Under the clear wording, the agreement proceeds are to be applied against the last maturing installment.
"JUDGMENT:
 "It is therefore ORDERED, ADJUDGED AND DECREED by the Circuit Court of Baldwin County, Alabama as follows:
 "1. The court finds and declares that interest on the unpaid balance of the purchase price began to accrue on January 1, 1977.
 "2. The court finds and declares that the portion of the timber sales proceeds to be paid to the defendants shall be applied first to accrued interest and then to the principal.
 "3. The parties [have] stipulated that when the court determined the issues presented in the action, that the decree would be submitted to the accountants for the respective parties to calculate the total amount owed by the plaintiffs to the defendants, based on the court's findings. Therefore, the court directs both parties to submit copies of [this] decree to their respective accountants to calculate the amount due and owing from the plaintiffs to defendants and to submit a report of the same to the court. The court [retains] jurisdiction to conduct a further hearing, if necessary, to reconcile the reports of the accountants and to enter a final decree in this cause which fixes and determines the total amount owed by the plaintiffs to defendants.
"Done this the 31st day of August, 1988.
 "s/Charles E. Partin "CIRCUIT JUDGE"
At the outset, we note that the trial court heard testimony concerning the events surrounding the execution of the note and mortgage; therefore, we apply the ore tenus rule, which provides that the trial court's findings of fact will not be disturbed on appeal unless clearly erroneous or manifestly unjust and that every presumption will be indulged in favor of the court's findings. Gulledge v. Frosty Land Foods Int'l,Inc., 414 So.2d 60 (Ala. 1982).
The same presumption does not apply to the trial court's conclusions concerning the legal effect of the moratorium, however, because the terms of the moratorium are incorporated into the writings executed by the parties. In fact, both sides agreed that the trial judge would resolve the moratorium issue based on the language of the documents.
The appellant contends that there was not sufficient credible evidence of a mutual mistake to authorize the trial court to reform the promissory note in order to make its terms consistent with the antecedent contract of sale. We disagree. The general rule is that a court may exercise its equitable powers to reform an instrument where there was a mutual mistake. Pinson v. Veach, 388 So.2d 964 (Ala. 1980). There was evidence that the error was that of the scrivener, and we note that an error in draftsmanship establishes mutuality of mistake. Fidelity Service Ins. Co. v. A.B. Legg Sons BurialIns. Co., 274 Ala. 94, 145 So.2d 811 (1962). There are restrictions on the power to a court to reform a written instrument, of course, and a party seeking to have an instrument reformed *Page 605 
must produce clear, convincing, and satisfactory evidence that the instrument does not express the intent of the parties.Pinson v. Veach, supra; Adams v. Adams, 346 So.2d 1146 (Ala. 1977).
In order to meet their burden, the Woerners introduced into evidence documents executed prior to, or contemporaneously with, the execution of the promissory note; these documents showed that both sides contemplated that interest would begin to accrue on January 1, 1977. The Woerners also introduced the testimony of the promissory note's scrivener, who stated that he believed a mistake was made in the transcription and that the note should have specified that interest would begin to accrue on January 1, 1977. Sherman argues that the introduction of this evidence violated the parol evidence rule and was, therefore, improperly considered by the trial court. We conclude that the court did not err in receiving the evidence in this case.
The parol evidence rule provides that when parties reduce a contract to writing and intend that writing to be the complete contract, no extrinsic evidence of prior or contemporaneous agreements will be admissible to change, alter, or contradict the contractual writing. Shepherd Realty Co. v. Winn-DixieMontgomery, Inc., 418 So.2d 871 (Ala. 1982); however, extraneous evidence may be admissible to reform an ambiguous instrument. Cole v. Minor, 518 So.2d 61 (Ala. 1987). The question is, therefore, whether the note was ambiguous. At trial, the Woerners argued that the note was ambiguous because of a conflict between the statement regarding the date that interest would accrue and the payment terms. As stated before, interest was to accrue "from date," which commonly means from the date of the writing itself, Walker v. John Hancock Mut.Life Ins. Co., 167 Mass. 188, 45 N.E. 89 (1896). In the context of this case, that would mean that interest would begin to accrue from August 6, 1976; however, the payment clause provided for fixed yearly installments commencing on January 1, 1978, and ending on January 1, 1992, which when computed, did not provide that interest would begin to accrue on August 6, 1976. The payment terms seem to indicate, as determined by the trial judge, that interest would begin accruing on January 1, 1977, as contended by the Woerners.
The appellant contends that the trial court's finding "that neither the promissory note nor the agreement concerning the timber cutting [is] ambiguous," clearly settles the issue of ambiguity, and she complains that, nevertheless, the court allowed the Woerners to introduce evidence concerning the "due date" of the interest. We have to assume that, inasmuch as the trial judge did, in fact, find that there was a mutual mistake made by the parties, he must have found that an ambiguity existed concerning the "due date" of interest, even though in his interlocutory order, which was adopted into the final judgment, he had stated that there was no ambiguity.
We have reviewed the document, and after reviewing it we find that an ambiguity did exist and conclude that the trial judge's finding in his interlocutory order that there was no ambiguity did not refer to the provision concerning the "due date" for interest to accrue; therefore, we conclude that the trial court did not err in permitting the Woerners to present evidence concerning the scrivener's mistake, which evidence clearly indicates that a mistake in the drafting occurred and supports the trial court's finding that the statement regarding the beginning date for the accrual of interest was a mutual mistake.
After reviewing the record and the order of the trial court, and after considering the arguments of the parties, we conclude that the trial court's reformation of the document so as to correctly state the accrual date is due to be affirmed.
On the issue of the moratorium, the trial court found that the language of the agreement provided an extension of 12 months on the term of the note for every moratorium taken. The moratorium agreement provided:
 "The unpaid balance [of each installment] of sixty-seven thousand eight hundred fourteen dollars [and] sixty three *Page 606 
cents ($67,814.63) together with interest thereon from due date of such installment at the rate of eight percent (8%) per annum, shall be due and payable on January 1 of the year following the payment of all other installments due under the terms of the note hereinabove referred to."
(Emphasis added.) The "note hereinabove referred to" is clearly the original promissory note executed between the parties. That note contained a moratorium provision of its own. Apparently, the moratorium agreement in question here was executed to correct the "ambiguities" of the moratorium agreement in the original note. The moratorium agreement in the original note provided that postponed installments "shall extend the regular annual installments by twelve (12) months." Reading these two agreements together, we conclude that the trial court correctly held that each moratorium taken extended the term of the note by 12 months and that as to this issue also the judgment is due to be affirmed.
The judgment is affirmed.
AFFIRMED.
HORNSBY, C.J., and ALMON, ADAMS and STEAGALL, JJ., concur.
[1] Woerner Magnolia Farms, Inc., was apparently formed later by the Woerners to manage the farm.