Belmont Homes, Inc. ("Belmont"), appeals from an order effectively denying its motion to compel arbitration of its dispute with Zannie Law. We reverse and remand.
This dispute arises out of a transaction that occurred on September 22, 1999, in which Zannie Law purchased from American Dream Homes ("ADH") in Monroeville a new mobile home manufactured by Belmont at its Mississippi facilities. That purchase involved the execution on the same day of two instruments. One instrument, styled "Acknowledgment and Agreement" ("the agreement"), was executed by (1) Law, (2) a representative of ADH, which was designated in the Agreement as the "Retailer," and (3) Linda Conwill — as "Controller" — a representative of Belmont. The other instrument was styled "Manufactured Home Retail Installment Contract and Security Agreement" (the "installment contract"). The installment contract was signed only by Law and by a representative of ADH.
The agreement contained the model number and serial number of the mobile home Law was purchasing. Additionally, as its title implied, it contained various "acknowledgments" of the purchaser. In particular, Law acknowledged receipt of a "packet of materials," including a "homeowner's manual," and a "manufacturer's warranty and set-up instructions." Law also acknowledged that ADH was not an agent of Belmont, and that ADH had "dealt with [her] as an independent party." The agreement also contained an arbitration clause that provided, in pertinent part:
 "[A]ny dispute, controversy or claim of any kind or nature which has arisen or may arise between the parties . . . (including any dispute, controversy or claim relating to the validity of this arbitration clause), whether arising out of past, present or future dealings between the parties . . ., shall be governed by the Federal Arbitration Act and shall be settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator may be entered in any *Page 239 
court having jurisdiction thereof. Such arbitration proceedings shall be held at the principal place of business of [Belmont] or at such location as shall be designated by [Belmont], and shall be heard by an arbitrator who is either a (i) retired judge or (ii) practicing attorney who has conducted more than three (3) arbitrations during the preceding five (5) years."
(Emphasis added.) The agreement also contained the following merger clause: "This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof, supersedes any oral or written agreement between the parties with respect to the subject matter hereof and may not be amended or altered except by written agreement signed by the parties."
The installment contract contained, in addition to the price of the mobile home and the terms of financing, both an arbitration provision and a merger clause. The arbitration clause provided: "All disputes, claims, or controversies arising from or relating to this [contract] or the relationships which result from this [contract], or the validity of this arbitration clause or the entire [contract], shall be resolved by binding arbitration by one arbitrator selected by you with my consent." The merger clause provided: "This written contract is the only agreement that covers my purchase of the property. This contract can only be modified or amended, or provisions in it waived (given up), by a written modification to this contract signed by you."
Law subsequently became dissatisfied with her mobile home, and she sued Belmont and ADH. On August 29, 2001, Belmont filed a "Motion to Dismiss or, in the Alternative, Motion to Compel Binding Arbitration and Motion to Stay or, in the Further Alternative, Motion to Transfer Venue." This motion was accompanied by a brief, the agreement, and an affidavit of Mike Kennedy, the vice president of Belmont. In its brief, Belmont quoted portions of the agreement, particularly the provision requiring arbitration pursuant to the "Commercial Arbitration Rules of the American Arbitration Association." The brief did not mention the installment contract.
In a "Supplemental Response" to Belmont's motion, Law "consent[ed] to arbitrate according to the terms of the retail installment contract." (Some emphasis omitted.) More specifically, she stated:
 "Plaintiff agrees with defendant that this case should be arbitrated pursuant to the terms of the arbitration agreement. This arbitration clause in the retail installment contract requires that `all disputes shall be resolved by binding arbitration by one arbitrator selected by you with my consent.' Plaintiff has the burden of beginning the arbitration process. The plaintiff relies upon the retail installment contract's arbitration clause that requires the arbitrator to be selected with the plaintiff's consent. This arbitration should be held in accordance with the retail installment contract and security agreement. No [extrinsic] evidence of prior or contemporaneous agreements will be admissible to change, alter or contradict the retail installment contract. See Sherman v. Woerner Magnolia Farms, Inc., 565 So.2d 601, 605 (Ala. 1990). All prior and contemporaneous negotiations are deemed to be merged into that writing. Crimson Indus., Inc. v. Kirkland, 736 So.2d 597, 601 (Ala. 1999) (emphasis in original).
 "The retail installment contract was a fully integrated contract that includes all of the terms necessary for the contract, including the described subject *Page 240 
home; the buyer; manufacturer; and the seller; and the assignee/finance company; the price in financing terms; and an agreement regarding insurance, the assignment, and the signature of the dealer and the buyer. The retail installment contract includes the only available arbitration agreement."
(Emphasis added.)
On October 29, 2001, the trial court entered an order, stating, in pertinent part:
 "The court . . . finds that the defendant's Motion to Stay and Compel Arbitration is due to be granted, and it is hereby ORDERED that said motion is granted.
 "Based on the decision by the Supreme Court of Alabama in Ex parte Palm Harbor Homes, Inc., [798 So.2d 656] (Ala. 2001), it is further ORDERED that arbitration shall be held in accordance with the arbitration provision contained in the Retail Installment Contract and Security Agreement."
(Emphasis added.)
In Ex parte Palm Harbor Homes, Inc., 798 So.2d 656 (Ala. 2001), this Court held that a "Manufactured Home Retail Installment Contract and Security Agreement," one of three instruments containing an arbitration provision executed contemporaneously by the purchasers and the retail seller of a mobile home, superseded the other two instruments, because it contained a merger clause. Thus, the trial court essentially agreed with Law that "[t]he retail installment contract includes the only available arbitration agreement." In other words, because Belmont sought to compel arbitration under the terms of the agreement, rather than under the terms of the installment contract, the trial court's order, in effect, denied Belmont's motion to compel arbitration.
The parties disagree as to whether Palm Harbor controls this case. Belmont contends that it is entitled to arbitrate pursuant to the Commercial Arbitration Rules of the American Arbitration Association, as provided in the agreement, while Law contends the Commercial Arbitration Rules are inapplicable, the installment contract[1] having prescribed another procedure. The question on appeal, therefore, is whether PalmHarbor and the merger rules discussed in that case have any application to this case. We hold that they do not.
A "merger clause" is "a clause which states that all oral representations or agreements are merged into and subsumed by the written document of which the clause is a part." Sunchase Apartments v. SunbeltServ. Corp., 596 So.2d 119, 122 (Fla.Dist.Ct.App. 1992). "A merger clause operates only to establish that a written agreement is a completely integrated document, into which all prior and contemporaneousnegotiations are merged." Crimson Indus., Inc. v. Kirkland, 736 So.2d 597,601 (Ala. 1999). When a contract is integrated, "no extrinsic evidence of prior or contemporaneous agreements will be admissible to change, alter, or contradict the contractual writing." Sherman v. Woerner MagnoliaFarms, Inc., 565 So.2d 601, 605 (Ala. 1990). The merger rule applies as well to prior or contemporaneous writings as to oral agreements. PalmHarbor, supra; Infiniti of Mobile, Inc. v. Office, 727 So.2d 42 (Ala. 1999); Ex parte Conference America, Inc., 713 So.2d 953 (Ala. 1998);Crown Pontiac, Inc. v. McCarrell, 695 So.2d 615 (Ala. 1997); see alsoLakehead Pipe Line Co. v. *Page 241 Investment Advisors, Inc., 900 F. Supp. 234
(D.Minn. 1995).
However, the merger rule applies only to contracts between the sameparties. Clark v. Compania Ganadera de Cananea, S.A., 94 Ariz. 391, 397,385 P.2d 691, 695 (1963) ("A preliminary contract, either oral or written, is not merged into a later one unless the two are between the same parties."), opinion supplemented on denial of rehearing, 95 Ariz. 90,387 P.2d 235 (1963); Farm Bureau Policy Holders Members v. Farm BureauMut. Ins. Co. of Arkansas, 335 Ark. 285, 296, 984 S.W.2d 6, 12 (1998) ("merger [rule could not] apply because the same parties and the same subject matter [were] not involved"); The Nebraskans, Inc. v. Homan,206 Neb. 749, 750, 294 N.W.2d 879, 881 (1980) ("For a merger to take place, the same parties and the same subject matter must be involved . . . ."); Eagle Indus., Inc. v. Thompson, 321 Or. 398, 413, 900 P.2d 475,483 (1995); Fish v. Tandy Corp., 948 S.W.2d 886, 898 (Tex.App. 1997) ("Merger happens when the same parties to an earlier agreement later enter into a written integrated agreement covering the same subject matter."); Foote v. Taylor, 635 P.2d 46, 48 (Utah 1981) (there is no merger "unless the two contracts are between the same parties").
The "same-party" condition is not satisfied in this case. Belmont wasnot a party to the installment contract, and it does not rely on the installment contract for its right to arbitrate. Instead, it relies on the agreement, to which it and Law were signatories. It is in this respect that this case differs fundamentally from Palm Harbor.
The subject of the dispute in Palm Harbor was a mobile home manufactured by Palm Harbor Homes, Inc. ("Palm Harbor"), and sold by Southern Lifestyle Manufactured Housing, Inc. ("Southern Lifestyle"), to Jon W. Knapp and Brooke L. Knapp. At issue were three instruments, each containing an arbitration clause, namely, a "Manufactured Home Retail Installment Contract and Security Agreement" (the "security agreement") and two "free-standing instruments." 798 So.2d at 658. One of the freestanding instruments was styled "Alabama Arbitration Provision," and the other was styled "Agreement for Binding Arbitration." Id. All three instruments were signed by the Knapps and by Southern Lifestyle.
However, Palm Harbor was a signatory to none of the documents. Instead, Palm Harbor relied on a third-party beneficiary theory as the basis for its right to compel arbitration of the Knapps' claims against it. 798 So.2d at 658-59 n. 1. Significantly, the Alabama Arbitration Provision stated in pertinent part: "The parties further agree that this Arbitration Provision inures to the benefit of and is intended for thebenefit of the manufacturer of the mobile home as fully as if themanufacturer were a signatory to the Retail Installment Contract." Id. at 658 (emphasis in Palm Harbor). Because Palm Harbor's right to arbitrate was expressly tied to the security agreement, its rights were also subject to the merger clause in that document. But through the merger clause, the security agreement subsumed the contemporaneously executed, freestanding agreements. Consequently, Palm Harbor's rights were limited to those set forth in the security agreement.
Belmont's rights are not so limited. Belmont is a signatory, with Law, to a contract containing its own arbitration provision. Moreover, the agreement contains its own merger clause. Therefore, it not only represents an independent agreement between Belmont and Law, but theentire agreement between those two parties. *Page 242 
When an arbitration agreement is enforceable, courts are required to compel arbitration in accordance with the terms of the agreement.Southern Energy Homes Retail Corp. v. McCool, 814 So.2d 845 (Ala. 2001);Ex parte Messer, 797 So.2d 1079 (Ala. 2001). For these reasons, the trial court erred in disregarding the agreement and ordering arbitration under the terms of the installment contract, to which Belmont is not a party. The trial court's order is, therefore, reversed, and this cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
HOUSTON, SEE, LYONS, BROWN, JOHNSTONE, HARWOOD, and STUART, JJ., concur.
MOORE, C.J., dissents.
[1] The status of Law's claims against ADH is not readily apparent. In any case, ADH is not a party to this appeal.