862 So.2d 634 (2003)
CAVALIER MANUFACTURING, INC.
v.
James L. CLARKE.
Cavalier Manufacturing, Inc.
v.
Faye W. Wilson.
Cedar Ridge Factory Outlet, Inc.
v.
James L. Clarke.
Cedar Ridge Homes, Inc.
v.
George T. Watkins.
1011012 to 1011014 and 1011106.
Supreme Court of Alabama.
April 25, 2003.
*636 John R. Bradwell of Hill, Hill, Carter, Franco, Cole & Black, P.C., Montgomery, for appellant Cavalier Manufacturing, Inc.
Winston R. Grow of Brown, Hudgens, P.C., Mobile, for appellants, Cedar Ridge Factory Outlet, Inc., and Cedar Ridge Homes, Inc.
Joseph C. McCorquodale III of McCorquodale & McCorquodale, Jackson, for appellees James L. Clarke and Faye W. Wilson.
PER CURIAM.
This opinion consolidates four appeals: Cavalier Manufacturing v. Clarke, Cavalier Manufacturing v. Wilson, Cedar Ridge Factory Outlet v. Clarke, and Cedar Ridge Homes v. Watkins. Cedar Ridge Factory Outlet, Inc., and Cedar Ridge Homes, Inc. (hereinafter referred to collectively as "Cedar Ridge"),[1] and Cavalier Manufacturing, Inc. ("Cavalier"), all of which are mobile-home dealers or manufacturers and defendants in four actions pending in the Clarke Circuit Court, appeal separately from the trial court's order in each action compelling arbitration under the terms of retail installment contracts between the mobile-home dealers and the plaintiffs in each case.
We affirm the order of the trial court holding that Cedar Ridge Factory Outlet, a mobile-home dealer, is entitled under the terms of its retail installment contract with James L. Clarke to arbitrate the claims filed against it by Clarke. We affirm the order of the trial court that Cedar Ridge Homes, a mobile-home dealer, is entitled under the terms of its retail installment contract with George T. Watkins to arbitrate *637 the claims filed against it by Watkins. And, finally, we hold that Cavalier, a mobile-home manufacturer, is not a party to the retail installment contracts entered into by Cedar Ridge and Faye W. Wilson and by Cedar Ridge and Clarke; therefore, Cavalier cannot be compelled to arbitrate any claims against it under the terms of the arbitration clauses in the retail installment contracts. Cavalier is entitled to compel arbitration on all claims brought by Clarke and by Wilson, not under the terms of the retail installment contract, but under the terms of the arbitration clause contained in the "Acknowledgement and Agreement" entered into by Cavalier, Cedar Ridge Factory Outlet, and Wilson, and the "Acknowledgement" entered into between Cavalier, Cedar Ridge Factory Outlet, and Clarke. Therefore, we affirm the trial court's orders as to Cedar Ridge, and we reverse the trial court's orders as to Cavalier.

Watkins
On July 13, 1999, George T. Watkins bought, for $26,497.75, a mobile home from Cedar Ridge Homes in Thomasville, Alabama. The mobile home was manufactured by Chandeleur Homes, Inc. Watkins financed the purchase through Conseco Finance Corporation-Alabama, formerly Green Tree Financial Corporation-Alabama. At the time of the purchase, Watkins executed both a retail installment sales contract containing an arbitration clause and an "Agreement for Binding Arbitration." On November 9, 2000, Watkins sued Chandeleur, Conseco, and Cedar Ridge, asserting claims of negligent and intentional misrepresentation, breach of implied warranty, negligent transportation and installation of the mobile home, and failure of consideration. Chandeleur moved to compel arbitration of any warranty claims pursuant to an arbitration clause contained in the manufactured-home owners manual delivered with the new mobile home. Conseco moved to compel arbitration pursuant to the arbitration clause in the retail installment contract, stating in its motion that it would pay all costs of arbitration. Cedar Ridge moved to compel arbitration pursuant to the "Agreement for Binding Arbitration."
On November 19, 2001, the trial court granted Cedar Ridge's motion to compel arbitration. Cedar Ridge moved the court to reconsider its order and identify the agreement under which the parties were to arbitrate their dispute. The trial court, specifically relying on this Court's decision in Ex parte Palm Harbor Homes, Inc., 798 So.2d 656 (Ala.2001), denied Cedar Ridge's motion to reconsider and ordered that arbitration be conducted in accordance with the arbitration provision in the retail installment contract. Cedar Ridge appeals from that order.

Clarke
On August 23, 1999, James L. Clarke bought, for $44,887.75, a mobile home from Cedar Ridge Factory Outlet in Jackson, Alabama. The mobile home was manufactured by Cavalier. At the time of the purchase, Clarke and Cedar Ridge executed both a retail installment contract containing an arbitration clause and an "Agreement for Binding Arbitration"; and Clarke, Cedar Ridge, and Cavalier executed an "Acknowledgement and Agreement" that contained an arbitration clause. When the mobile home was delivered, Cavalier provided Clarke with a copy of the limited warranty on the mobile home, which contained yet another arbitration clause. On June 19, 2001, Clarke sued Cedar Ridge and Cavalier, asserting claims of negligent and intentional misrepresentation, breach of implied warranty, breach of express warranty, negligent design and manufacture, and negligent transportation *638 and installation of the mobile home.
Cavalier moved to dismiss or to stay the proceedings and to compel arbitration under the arbitration clauses in the "Acknowledgement and Agreement" and in the limited warranty. Cedar Ridge also moved to dismiss or to stay the proceedings pending arbitration, relying on either the arbitration clause in the "Agreement for Binding Arbitration" or the arbitration clause in the "Acknowledgement and Agreement." Clarke responded to Cedar Ridge's motion to compel arbitration, asserting that none of the arbitration agreements complied with the Magnuson-Moss WarrantyFederal Trade Commission Improvement Act. However, Clarke stated that he would consent to arbitrate under the terms of the arbitration clause in the retail installment contract. The trial court, relying specifically on this Court's holding in Ex parte Palm Harbor, ordered the parties to arbitrate the dispute under paragraphs 14 and 15 of the retail installment contract.
On February 8, 2002, Clarke moved for the appointment of a neutral arbitrator. Cedar Ridge answered Clarke's motion, asserting that the motion was premature because Cedar Ridge could still appeal the trial court's arbitration order. Both Cavalier and Cedar Ridge then filed notice of appeal of the trial court's order compelling arbitration under the terms of the arbitration clause in the retail installment contract.

Wilson
On September 29, 1999, Faye W. Wilson bought, for $56,135.25, a mobile home manufactured by Cavalier and sold by Cedar Ridge Factory Outlet in Jackson, Alabama. At the time of the purchase, Wilson and Cedar Ridge executed both a retail installment contract that contained an arbitration clause and an "Agreement for Binding Arbitration." Wilson, Cedar Ridge, and Cavalier executed an "Acknowledgement and Agreement." Cavalier provided Wilson a copy of the limited warranty for the mobile home, which also contained an arbitration clause. On September 13, 2001, Wilson sued Cedar Ridge and Cavalier, asserting claims of negligent and intentional misrepresentation, breach of implied warranty, breach of express warranty, negligent design and manufacture, and negligent transportation and installation of the mobile home.
Cavalier moved to dismiss Wilson's claims, or, in the alternative, to stay the proceedings and to compel arbitration under the arbitration clauses in the limited warranty and in the "Acknowledgement and Agreement." Cedar Ridge also moved to dismiss Wilson's claims or, in the alternative, to stay the proceedings and to compel arbitration under the terms of the "Agreement for Binding Arbitration." On November 6, 2001, the trial court, believing the parties had agreed to arbitrate their dispute, appointed Claude Neilson as arbitrator. The trial court's order stated that "[t]he attorney for the plaintiff having indicated to the Court that the attorneys for the plaintiff and the defendants have agreed upon an arbitrator in this cause." On November 13, 2001, Cavalier moved to amend or vacate the order appointing Neilson as arbitrator, stating that it had not agreed to Neilson's appointment and that its arbitration agreements with Wilson required arbitration to proceed under the commercial arbitration rules of the American Arbitration Association ("the AAA"). On December 10, 2001, Wilson filed an amended complaint realleging her earlier claims and also alleging an additional breach-of-express-warranty claim. Cavalier moved to dismiss the amended complaint, or, in the alternative, to stay proceedings and to compel arbitration under *639 the arbitration clauses in the "Acknowledgement and Agreement" and in the limited warranty.
On January 9, 2002, the trial court, relying specifically on this Court's holding in Ex parte Palm Harbor, entered an order compelling arbitration under the arbitration clause in the retail installment contract. On January 16, 2002, the trial court ordered Wilson, Cedar Ridge, and Cavalier to arbitrate their dispute before arbitrator Claude Neilson. Cavalier appeals from the trial court's order compelling arbitration under the terms of the retail installment contract.[2]

Cavalier's Appeals as to Clarke and Wilson
Cavalier argues that the trial court erred when, relying on Ex parte Palm Harbor, it ordered Cavalier to arbitrate Clarke's and Wilson's claims under the terms of the retail installment contracts entered into by Clarke and Cedar Ridge, and by Wilson and Cedar Ridge. In Ex parte Palm Harbor, the parties contemporaneously executed three documentsa security agreement containing an arbitration clause and two freestanding arbitration agreements. The security agreement contained both a merger clause and all the terms necessary to complete the transaction. None of the documents incorporated by reference any other document. Neither freestanding arbitration document contained a merger clause, and the terms of the freestanding arbitration documents contradicted the terms of the arbitration clause in the security agreement. This Court held that the merger clause in the security agreement made it the entire agreement between the parties and worked to extinguish the freestanding arbitration documents. 798 So.2d at 660-62.
Cavalier argues that these cases are distinguishable from Ex parte Palm Harbor because it, Cedar Ridge, and Clarke, on the one hand, and it, Cedar Ridge and Wilson, on the other, are all parties to the "Acknowledgement and Agreement" executed in each case, but it is not a party to the retail installment contracts that Clarke and Wilson each executed with Cedar Ridge. In Ex parte Palm Harbor, Palm Harbor Homes was not a party to any of the agreements; it relied on a third-party-beneficiary theory as its basis for compelling arbitration. 798 So.2d at 658-59 n. 1. Cavalier argues that because it is not a party to the retail installment contracts, and because the "Acknowledgement and Agreement" contains both an arbitration clause and a merger clause, the "Acknowledgement and Agreement" constitutes the entire agreement between it, Cedar Ridge, and Clarke, and between it, Cedar Ridge, and Wilson.
This Court decided this exact question in Belmont Homes, Inc. v. Law, 841 So.2d 237 (Ala.2002). In Belmont Homes, Belmont, the mobile-home manufacturer, was not a party to the retail installment contract executed between Law and the mobile-home dealer, but Belmont was a party to a document entitled "Acknowledgment and Agreement." The acknowledgment in Belmont contained an arbitration clause and a merger clause. Id. at 241. In Belmont, this Court stated that the merger clause in the retail installment contract did not extinguish the acknowledgment because Belmont was not a party to the retail installment contract and because merger clauses operate to merge only agreements between the same parties. Id. at 241. This Court held in Belmont that the acknowledgment "not only represent[ed] an independent agreement between Belmont and Law, but the entire *640 agreement between those two parties." Id. at 241.
In this case, Cavalier is not a party to the retail installment contracts. The "Acknowledgement and Agreement," to which Cavalier is a party, contain both an arbitration clause and a merger clause. Therefore, the "Acknowledgement and Agreement" constitutes the entire agreement between Cavalier, Cedar Ridge, and Clarke, on the one hand, and between Cavalier, Cedar Ridge, and Wilson, on the other. Cavalier is entitled to arbitrate all disputes between it, Cedar Ridge, and Clarke, and between it, Cedar Ridge, and Wilson under the terms of the arbitration clause in the "Acknowledgement and Agreement" executed with those parties. In each case, the trial court erred in disregarding the respective "Acknowledgement and Agreement." Therefore, the trial court's orders regarding Cavalier are reversed and these cases are remanded for further proceedings consistent with this opinion.

Cedar Ridge's Appeals as to Clarke and Watkins
Cedar Ridge argues, like Cavalier, that the trial court erred when, relying on Ex parte Palm Harbor, it compelled it to arbitrate claims brought by Clarke and Watkins under the terms of the retail installment contracts. Belmont Homes, however, is inapposite to the issues raised in Cedar Ridge's appeals because, unlike Cavalier, which is not a party to the retail installment contracts at issue here, Cedar Ridge is a party to the retail installment contracts executed by Clarke and Watkins. We must, therefore, consider the operation of the "Agreement for Binding Arbitration" and the "Acknowledgement and Agreement," all of which were executed by Cedar Ridge, in relation to the retail installment contracts.
In Watkins's case, Cedar Ridge argues that Watkins's claims should be arbitrated under the "Agreement for Binding Arbitration." Watkins filed no brief in this case. In Clarke's case, Cedar Ridge argues that Clarke's claims should be arbitrated under the "Acknowledgement and Agreement" or under the "Agreement for Binding Arbitration." Clarke argues that Ex parte Palm Harbor controls in this case because the retail installment contract contains both an arbitration clause and a merger clause, and that, therefore, the merger clause in the retail installment contract works to extinguish the other agreements. Clarke's and Watkins's retail installment contracts are substantially similar, so we consider that issue first.
"Under general Alabama rules of contract interpretation, the intent of the contracting parties is discerned from the whole of the contract." Homes of Legend, Inc. v. McCollough, 776 So.2d 741, 746 (Ala.2000).[3] "If the court determines that the terms [of the contract] are unambiguous (susceptible of only one reasonable meaning), then the court will presume that the parties intended what they stated and will enforce the contract as written." 776 So.2d at 746. "Whether a contract is integrated is ordinarily a question of law for the court to decide." Ex parte Palm Harbor, 798 So.2d at 661. "[A] contract may incorporate the terms of another document by reference." McDougle v. Silvernell, 738 So.2d 806, 808 (Ala.1999); Ex parte Dan Tucker Auto Sales, Inc., 718 So.2d 33, 36 (Ala.1998)("Parties to a contract are bound by pertinent references therein to outside facts and documents."). "Parties to a written contract may by mutual consent without other consideration orally alter, *641 modify or rescind the contract." Watson v. McGee, 348 So.2d 461, 464 (Ala. 1977). When parties execute successive agreements and the "two agreements cover the same subject matter and include inconsistent terms, the later agreement supersedes the earlier agreement." CMI Int'l, Inc. v. Intermet Int'l Corp., 251 Mich.App. 125, 130, 649 N.W.2d 808, 812 (2002). Further, "it is not always necessary for a later contract to contain an integration clause in order for this later contract to supersede an earlier contract." Archambo v. Lawyers Title Ins. Corp., 466 Mich. 402, 414 n. 16, 646 N.W.2d 170, 177 n. 16 (2002).
Cedar Ridge argues that because it executed the "Agreement for Binding Arbitration" contemporaneously with the retail installment contract, the two instruments should be read together as one contract. See Pacific Enters. Oil Co. (USA) v. Howell Petroleum Corp., 614 So.2d 409, 414 (Ala.1993)("It is well settled that `two or more instruments executed contemporaneously by the same parties in reference to the same subject matter constitute one contract and should be read together in construing the contract.'"). This Court, however, substantially limited that rule in Ex parte Palm Harbor. In Ex parte Palm Harbor, one of the contemporaneously executed instruments contained an arbitration clause and a merger clause, none of the instruments incorporated the others by reference, and the arbitration provisions in the instruments without merger clauses contradicted the arbitration clause in the instrument with a merger clause; this Court held that the instrument containing the merger clause constituted the only contract between the parties. 798 So.2d at 661. If we apply the rule as stated in Ex parte Palm Harbor, because the retail installment contracts executed by Cedar Ridge contain a merger clause, it would initially appear that the arbitration clause in the retail installment contracts would extinguish the arbitration clauses in the "Agreement for Binding Arbitration" signed by Clarke and Watkins.
Cedar Ridge argues, however, that its "Agreement for Binding Arbitration" is distinguishable from the agreements in Ex parte Palm Harbor because Cedar Ridge's "Agreement for Binding Arbitration" incorporates by reference the terms of the retail installment contract. The "Agreement for Binding Arbitration" reads in pertinent part: "This agreement is a part of the contract of sale entered into this date between Buyer and Seller, the terms [and] provisions of which are incorporated herein by reference, and shall be binding upon and inure to the benefit of their respective heirs and assigns."
Cedar Ridge argues correctly that a contract, such as the "Agreement for Binding Arbitration," may incorporate the terms of another contract by reference. McDougle, 738 So.2d at 808.[4] Moreover, parties are free to modify agreements, and if the terms of a subsequent agreement contradict the earlier agreement, the terms of the later agreement prevail. See Watson, 348 So.2d at 464; CMI International, 251 Mich.App. at 130, 649 N.W.2d at 812. Also, the subsequent agreement need not contain its own merger clause to supersede the earlier integrated agreement. Archambo, 466 Mich. at 414 n. 16, 646 N.W.2d at 177 n. 16.
*642 Cedar Ridge asserts in this case that the "Agreement for Binding Arbitration" was entered into subsequent to the retail installment contract and thus modifies the retail installment contract, and that Cedar Ridge should be allowed to arbitrate its disputes with Clarke and Watkins under that agreement. In Clarke's case, Cedar Ridge also argues that because it and Clarke are both parties to the "Acknowledgement and Agreement," and because it and Clarke entered into the "Acknowledgement and Agreement" subsequent to the retail installment contract, it should be allowed to arbitrate its dispute with Clarke under the terms of the "Acknowledgement and Agreement." While Cedar Ridge argues correctly that a subsequent agreementthe "Agreement for Binding Arbitration" or the "Acknowledgement and Agreement"would supersede a prior agreementthe retail installment contractthe record does not reveal the order in which the documents in this case were executed. Nor does the record reveal any reliable way for a court to determine the sequence. Likewise, the record does not reveal any mutual intent among the parties for an order of execution that would cause any particular document to supersede other documents.
Instead, in each case, the evidence of record is, without any genuine factual dispute, that the documents were executed contemporaneously, on the same day, and were intended to be construed together. Therefore, in each case, the differences among the respective arbitration provisions in the documents constitute ambiguities, which should be construed against the defendants, who supplied the forms. Homes of Legend, 776 So.2d at 746 ("if all other rules of contract construction fail to resolve the ambiguity, then, under the rule of contra proferentem, any ambiguity must be construed against the drafter of the contract"). Thus, the trial court was right in compelling arbitration pursuant to the document the plaintiffs deemed most favorable to themthe main document in each casethe retail installment contract. Therefore, Cedar Ridge must arbitrate its disputes with both Watkins and Clarke under the terms of the retail installment contract.
We recognize that because Cedar Ridge and Clarke are obligated to arbitrate their dispute under the retail installment contract, Clarke must arbitrate his disputes with Cedar Ridge and with Cavalier in separate proceedings conducted under the provisions of different arbitration agreements.
Cavalier argues correctly that nothing in the Federal Arbitration Act provides for consolidated proceedings absent an expressed intention by the parties to do so. The Supreme Court of the United States held in Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 221, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985), "[t]he preeminent concern of Congress in passing the [Federal Arbitration] Act was to enforce private agreements into which parties had entered, and that concern requires that we rigorously enforce agreements to arbitrate, even if the result is `piecemeal' litigation, at least absent a countervailing policy manifested in another federal statute."

Other Issues
Finally, Clarke and Wilson argue on appeal that all of the "Agreements for Binding Arbitration" and the "Acknowledgements and Agreements" are void because, they argue, the underlying transactions do not substantially affect interstate commerce, because they do not comply with the Magnuson-Moss WarrantyFederal Trade Commission Improvement Act, and because they are unconscionable. To the extent that these *643 arguments might be validand we do not offer any judgment as to their validity these arguments would apply with equal force to the trial court's orders to arbitrate these disputes under the terms of the retail installment contractthat is, the orders from which Cavalier and Cedar Ridge appeal. These are not grounds on which we could affirm the orders of the trial court. Neither Clarke nor Wilson has cross-appealed in this case; therefore, these arguments are not properly before the court. "[T]he law of Alabama is well-settled on this point. In the absence of taking an appeal, an appellee may not cross-assign as error any ruling of the trial court adverse to appellee." McMillan, Ltd. v. Warrior Drilling & Eng'g Co., 512 So.2d 14, 24 (Ala.1987). See also Goldberg & Assocs., P.C. v. Donohoe, 777 So.2d 144, 146 (Ala.Civ.App.2000)("Donohoe argues in her brief on appeal that the trial court erred.... Donohoe did not cross-appeal to raise this issue on appeal.... Therefore, this court may not consider that issue."); McCreless v. McCreless, 673 So.2d 438, 440 (Ala.Civ.App.1995)("the mother argues in her brief that the trial court miscalculated the amount of the arrearage, but, because she did not cross appeal, that issue is not properly before us and we will not address her contention").

Conclusion
We affirm the trial court's orders compelling Cedar Ridge to arbitrate its disputes under the terms of the retail installment contracts. We reverse the trial courts' orders as to Cavalier and remand those cases. On remand the trial court shall stay the proceedings against Cavalier and order the parties to arbitrate under the terms of the respective "Acknowledgement and Agreement."
1011012REVERSED AND REMANDED WITH DIRECTIONS.
1011013REVERSED AND REMANDED WITH DIRECTIONS.
SEE, LYONS, JOHNSTONE, HARWOOD, WOODALL, and STUART, JJ., concur.
MOORE, C.J., and HOUSTON, J., concur in the result.
1011014AFFIRMED.
1011106AFFIRMED.
LYONS, JOHNSTONE, HARWOOD, and STUART, JJ., concur.
MOORE, C.J., and HOUSTON and WOODALL, JJ., concur in the result.
SEE, J., dissents.
WOODALL, Justice (concurring in case no. 1011012 and case no. 1011013 and concurring in the result in case no. 1011014 and case no. 1011106).
I concur in the per curiam opinion insofar as it reverses the trial court's orders as to Cavalier and holds that James Clarke and Faye Wilson must arbitrate their claims against Cavalier under the terms of the "Acknowledgement and Agreement." However, insofar as the opinion affirms the trial court's orders as to Cedar Ridge and holds that Clarke and George Watkins must arbitrate their claims against Cedar Ridge under the terms of the retail installment contract, I concur in the result, because I am convinced that Ex parte Palm Harbor Homes, Inc., 798 So.2d 656 (Ala. 2001), compels such a result.
MOORE, Chief Justice (concurring in the result).
I concur in the result. The parties do not argue that their respective disputes should not be resolved in arbitration; rather, *644 they argue over which instrument reflects the agreement to resolve disputes by, or governs the terms of, arbitration. Because there is no opposition to arbitration per se, the principles articulated in my dissent in Selma Medical Center v. Fontenot, 824 So.2d 668, 676-93 (Ala.2001), do not require that I dissent in these cases.
SEE, Justice (concurring in case no. 1011012 and case no. 1011013 and dissenting in case no. 1011014 and case no. 1011106).
I concur in the per curiam opinion insofar as it reverses the trial court's orders as to Cavalier and holds that James Clarke and Faye Wilson must arbitrate their claims under the terms of the "Acknowledgement and Agreement." I dissent, however, from that part of the opinion that affirms the trial court's orders as to Cedar Ridge and holds that Clarke and George Watkins must arbitrate their claims against Cedar Ridge under the terms of the retail installment contract.
The per curiam opinion treats all the documents executed by Clarke and Watkins in connection with the sale as having been executed contemporaneously because, it concludes:
"[T]he record does not reveal the order in which the documents in this case were executed. Nor does the record reveal any reliable way for a court to determine the sequence. Likewise, the record does not reveal any mutual intent among the parties for an order of execution that would cause any particular document to supersede other documents."
862 So.2d at 642. I submit that a careful reading of all of the documents would permit the trial court to reliably determine the sequence of their execution.

I. Watkins
Cedar Ridge and Watkins executed two agreements, a retail installment contract and a stand-alone "Agreement for Binding Arbitration." The retail installment contract provides, in part: "This contract can only be modified or amended, or provisions in it waived (given up), by a written modification to this Contract signed by you." The "Agreement for Binding Arbitration" states:
"This agreement is a part of the contract of sale entered into this date between Buyer and Seller, the terms [and] provisions of which are incorporated herein by reference, and shall be binding upon and inure to the benefit of their respective heirs and assigns."
From the use of the past tense "entered," we can infer that the parties entered into the contract of sale before executing the "Agreement for Binding Arbitration." The only "contract of sale" contained in the record is the retail installment contract. Therefore, by incorporating the retail installment contract, the "Agreement for Binding Arbitration" modified the arbitration provision in the retail installment contract.
Once it incorporated the retail installment contract, the "Agreement for Binding Arbitration" materially altered the terms of the contract of sale between Cedar Ridge and Watkins.[5] Among other things, the "Agreement for Binding Arbitration" offered Cedar Ridge and Watkins greater mutuality of remedy and established limits on Cedar Ridge's potential liability to Watkins for the setup of the mobile home. Therefore, the retail installment contract *645 and the "Agreement for Binding Arbitration," read together, evidence Watkins and Cedar Ridge's intent to resolve any future disputes under the terms of the "Agreement for Binding Arbitration."

II. Clarke
The retail installment contract and "Agreement for Binding Arbitration" executed by Cedar Ridge and Clarke are virtually identical to the agreements by the same names executed by Cedar Ridge and Watkins. Therefore, for the reasons I conclude Cedar Ridge and Watkins should arbitrate their dispute under the terms of the "Agreement for Binding Arbitration" and not under the terms of the retail installment contract, I conclude that Cedar Ridge and Clarke should not be compelled to arbitrate their dispute under the terms of the retail installment contract.[6]
NOTES
[1] Cedar Ridge Factory Outlet, Inc., and Cedar Ridge Homes, Inc., are essentially the same entity. They do business at the same location; they are represented by the same attorney on appeal; they use essentially the same retail sales agreement and freestanding arbitration agreement; and they make the same legal arguments on appeal. Except where necessary to distinguish them in order to render a holding in a specific case, we treat Cedar Ridge Factory Outlet and Cedar Ridge Homes as the same entity for the purposes of this appeal.
[2] Cedar Ridge is not a party to the appeal in Wilson's case.
[3] Following our reasoning in Ex parte Palm Harbor, we "resort to ordinary principles of contract law and contract construction" to resolve this issue. 798 So.2d at 660 n. 2.
[4] This Court in Ex parte Palm Harbor explicitly recognized this distinction, stating: "Had they so desired the defendant-drafters could easily have included in the merger clause a specific reference to either of the free-standing instruments...." 798 So.2d at 661.
[5] Although Cedar Ridge is a party to the retail installment contract, the primary purpose of that contract was to protect the continuing interest of the lender, Conseco, in the mobile home. In contrast, the "Agreement for Binding Arbitration" is a contract between Watkins and Cedar Ridge only.
[6] Unlike Watkins's case, Clarke also entered into an "Acknowledgement and Agreement" with Cedar Ridge that also contains an arbitration provision. To the extent, if any, the arbitration provisions in the "Acknowledgement and Agreement" and in the "Agreement for Binding Arbitration" materially differ, the trial court has reliable methods at its disposal to resolve any such differences; the trial court could conduct an evidentiary hearing to determine the order in which Cedar Ridge and Clarke executed the "Acknowledgment and Agreement" and the "Agreement for Binding Arbitration."