The Mobile Circuit Court entered summary judgments in favor of ReMax Advantage, Inc., ReMax Realty Professionals, Inc., and Wilshire Credit Corporation, the defendants in an action filed by James Hunter and Sylvia Hunter. The Hunters appeal from the judgments. We affirm.
 Facts and Procedural History
James Hunter and Sylvia Hunter wanted to purchase a house. The Hunters signed a buyer agency agreement with David Rice, an agent of ReMax Realty. On October 7, 2002, the Hunters entered an agreement ("the purchase agreement") to purchase from Wilshire a house located at 5425 Washington Boulevard in Theodore.[1]
Wilshire had listed the house for sale with ReMax Advantage. The purchase agreement indicated, among other things, that the purchase price was $118,900, that the Hunters would pay a deposit of $500, and that the Hunters' offer would expire on October 9, 2002.
On October 11, 2002, two days after the Hunters' purchase offer had expired, Wilshire presented the Hunters an "Addendum to Purchase Agreement." The addendum referred to the house and the purchase agreement. It provided, in part:
 "This addendum is to be part of and incorporated in the above Purchase Agreement. Price to be $119,500. Earnest money deposit to be increased to $6000.00. Buyer to furnish pre-qual [sic] letter, in 5 days, with full loan approval by 10/31/02. Seller will credit buyer $400 for purchase of home warranty."
James Hunter signed the addendum. Neither the purchase agreement nor the addendum had been signed by Wilshire at that time.
On November 4, 2002, Rice provided James Hunter with a form from Wilshire entitled "Real Estate Purchase Contract Counter Offer [sic] Addendum." Wilshire had not signed the form. According to the Hunters, Rice advised James Hunter that the counteroffer was necessary "in order to set the closing up." James Hunter signed the counteroffer. The counteroffer stated that it "is to be made part of, and incorporated into Contract dated: 10/31/02, between Wilshire . . . and the [Hunters]."[2] The counteroffer provided that if Wilshire defaulted under the terms of the "Contract or this Addendum, [the Hunters] shall be entitled to the return of the Earnest Money Deposit as [their] sole and exclusive remedy." In addition, the counteroffer included the following clauses:
 "Closing Date/Time of Essence: Closing to occur on or before: 11/20/02. . . . Seller shall have the right, in Seller's sole discretion, to extend the closing date or to void the Contract if; [sic] Seller determines that it is unable to convey good and insurable title to the *Page 812 
Property by a reputable title insurance company at the regular rates.
". . . .
 "Acceptance: This counter offer [sic] is made subject to Sellers [sic] Senior Management approval and shall not become a binding Contract until signed by Seller. Seller reserves the right to continue to offer the herein described property for sale and accept any other offer acceptable to Seller prior to full Senior Management approval."
On November 13, 2002, at 3:00 p.m., Wilshire acknowledged receipt of the purchase agreement. At 3:05 p.m., Wilshire signed the addendum and, at 3:30 p.m., Wilshire signed the counteroffer.
Closing was originally scheduled for November 18, 2002. The parties agreed that the Hunters would not take possession of the house until closing, but the Hunters made improvements to the property before the scheduled closing date. The closing did not occur on the scheduled date because a survey to determine the property lines had not been completed. The Hunters later learned that Wilshire was not going to close on the property because there were numerous judgments and liens against the property and, furthermore, because the survey indicated that the house encroached on an adjoining property line.
In accordance with the terms of the counteroffer, Wilshire attempted to return the $6,000 earnest-money deposit to the Hunters. The Hunters refused to accept the money. The Hunters sued Wilshire, seeking specific performance and consequential damages. The Hunters also sued ReMax Advantage and ReMax Realty seeking compensatory damages and punitive damages. ReMax Advantage, ReMax Realty, and Wilshire all moved for summary judgments. The trial court entered summary judgments in their favor. The Hunters appeal.
 Standard of Review
"A party is entitled to a summary judgment when `there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.'" University ofSouth Alabama v. Progressive Ins. Co., 904 So.2d 1242, 1246
(Ala. 2004) (quoting Rule 56(c)(3), Ala. R. Civ. P.). "`[W]hen a trial court sits in judgment on facts that are undisputed, an appellate court will determine whether the trial court misapplied the law to those undisputed facts.'" Moss v. Williams,822 So.2d 392, 394 (Ala. 2001) (quoting Craig Constr. Co. v.Hendrix, 568 So.2d 752, 756 (Ala. 1990)).
 Analysis I. Wilshire
In entering a summary judgment in favor of Wilshire, the trial court determined that the counteroffer was legally enforceable and, therefore, that the Hunters' sole remedy was the return of the earnest-money deposit. The Hunters argue, however, that the counteroffer is "not operable as a matter of law." They argue that the purchase agreement and the addendum to that agreement constitute the only enforceable contract between the Hunters and Wilshire, and that that contract defines the rights of the parties.[3] The Hunters assert that Wilshire breached the terms of the purchase agreement and *Page 813 
the addendum, and that, therefore, they are entitled to specific performance and the reimbursement of the expenses they incurred as a result of Wilshire's breach.
We first consider whether the counteroffer is an enforceable contract. "`"The requisite elements of [a valid contract] include: an offer and an acceptance, consideration, and mutual assent to terms essential to the formation of a contract."'"Avis Rent A Car Sys., Inc. v. Heilman, 876 So.2d 1111, 1118
(Ala. 2003) (quoting Ex parte Grant, 711 So.2d 464, 465 (Ala. 1997), quoting in turn Strength v. Alabama Dep't of Finance,622 So.2d 1283, 1289 (Ala. 1993)). Here, on October 7, 2002, the Hunters offered Wilshire $118,900 to purchase a house. The Hunters' offer expired on October 9, 2002. On October 11, 2002, Wilshire presented the unsigned addendum to James Hunter, and he signed it.[4] On November 4, 2002, James Hunter received and signed the counteroffer, which, most notably, limited the Hunters' remedies.[5] On November 13, 2002, Wilshire first acknowledged receipt of the purchase agreement (which had by that time expired), signed the addendum, and signed the counteroffer, in that order.
On November 4, 2002, by signing the counteroffer, the Hunters offered to purchase the house pursuant to the terms of the counteroffer for $119,500. The terms of the counteroffer were inconsistent with the terms of the purchase agreement and the addendum. Specifically, the counteroffer states that if Wilshire is unable to convey "good and insurable" title to the property, Wilshire can either extend the closing date or void the contract. The purchase agreement provides that "A FURTHER PERIOD OF THIRTY (30) DAYS shall be allowed for closing if: (A) the closing is delayed by reason of title defects which can be readily corrected. . . ." (Capitalization in original.) Although the purchase agreement states that "[i]f . . . the title is not marketable . . . [the earnest-money] deposit [is] to be refunded," that statement does not purport to limit the Hunters' remedy. However, the counteroffer limits the Hunters' remedy, in the event of a default by Wilshire, to the return of the earnest-money deposit. In this case, Wilshire was unable to convey marketable title because of numerous judgments and liens against the property and because the house encroached on an adjoining property line. In accordance with the terms of the counteroffer, Wilshire attempted to return the earnest money to the Hunters. The Hunters refused the earnest money and sued for specific performance and damages.
Wilshire originated, but did not sign, the counteroffer. The counteroffer specified *Page 814 
the manner in which it was to be accepted, stating that it "shall not become a binding Contract until signed by [Wilshire]." SeePaterson Edey Lumber Co. v. Carolina-Portland, 215 Ala. 621,626, 112 So. 245, 249 (1927); Hardwood Package Co. v. Courtney, 253 F. 929, 931 (4th Cir. 1918) ("an unsigned contract cannot be enforced by either of the parties, however completely it may express their mutual agreement, if it was also agreed that the contract should not be binding until signed by both of them").See also 1 Arthur L. Corbin, Corbin on Contracts § 3.34 at 487 (Joseph M. Perillo ed., 1993) ("When one party solicits and receives an . . . expression of agreement from another, clearly specifying that there is to be no contract until . . . assent by some officer or representative of the solicitor, the solicitation is not itself an offer. It is a request for an offer.").
On November 13, 2002, Wilshire accepted the Hunters' offer to buy the house when it signed the counteroffer. The parties' signatures evidence a mutual assent to the terms of the counteroffer. Southern Energy Homes, Inc. v. Hennis,776 So.2d 105 (Ala. 2000) ("Assent must be manifested by something.
Ordinarily, it is manifested by a signature."). Accordingly, the counteroffer became a legally enforceable agreement on November 13, 2002, when Wilshire signed the form.
The Hunters' argument that the purchase agreement and the addendum contained the parties' only legally enforceable agreement and, accordingly, that the counteroffer is not legally binding, is without merit. Even if we were to conclude, as the Hunters argue, that the purchase agreement and the addendum were legally binding, we would nonetheless conclude that the counteroffer governs the parties' rights. "When parties execute successive agreements and the `two agreements cover the same subject matter and include inconsistent terms, the later agreement supersedes the earlier agreement.'" Cavalier Mfg.,Inc. v. Clarke, 862 So.2d 634, 641 (Ala. 2003) (quoting CMIInt'l, Inc. v. Intermet Int'l Corp., 251 Mich.App. 125, 130,649 N.W.2d 808, 812 (2002)).[6] The subject matter of the purchase agreement and the addendum is the house located at 5425 Washington Boulevard in Theodore. The subject matter of the counteroffer is the same house. The counteroffer limits the Hunters' remedy in the event of Wilshire's default to the return of their earnest money; the purchase agreement and the addendum do not. Accordingly, the trial court did not err in entering a summary judgment in favor of Wilshire and concluding that, in accordance with the terms of the counteroffer, the Hunters' sole remedy is the return of their earnest money.
 II. ReMax Advantage and ReMax Realty
The Hunters argue that the trial court erred in entering summary judgments in favor of ReMax Advantage and ReMax Realty. However, the arguments the Hunters make on appeal, which concern alleged misrepresentations on the part of ReMax Advantage and ReMax Realty, do not appear in their complaint. Accordingly, we will not address the merits of the Hunters' arguments. SeeRodriguez-Ramos v. J. Thomas Williams, Jr., *Page 815 M.D., P.C., 580 So.2d 1326, 1328 (Ala. 1991) ("This Court cannot put a trial court in error for failing to consider a matter which, according to the record, was not presented to, nor decided by it.").
 Conclusion
The trial court's summary judgments for ReMax Advantage, ReMax Realty, and Wilshire were proper. Accordingly, we affirm the judgments.
AFFIRMED.
NABERS, C.J., and HARWOOD, STUART, and BOLIN, JJ., concur.
[1] Wilshire is the loan servicer for the mortgagee, First Union National Bank, as trustee of a residential collateral mortgage trust, which obtained title to the property by an auctioneer's deed.
[2] There was no contract entered into on October 31, 2002.
[3] The Hunters also argue that the reference in the counteroffer to "a contract dated October 31, 2002 by and between the Hunters and Wilshire Credit Corp. and [the fact that] there is no such contract dated October 31, 2002," creates an ambiguity. The argument that the counteroffer is ambiguous concerns the interpretation of the counteroffer. It does not support the Hunters' argument that the purchase agreement and the addendum, neither of which is dated October 31, 2002, form the only enforceable contract.
[4] The addendum increased the purchase price to $119,500, increased the amount of the earnest-money deposit to $6,000, required the Hunters to provide a pre-qualification letter within five days and to acquire full loan approval by October 31, 2002, and stated that Wilshire would credit the Hunters $400 for the purchase of a home warranty.
[5] The Hunters do not allege in their complaint or on appeal that Wilshire presented the counteroffer because the title binder identified defects in the title to the property, nor do they allege that Wilshire breached the implied covenant of good faith and fair dealing when it presented the counteroffer on the same day the insurer issued the title binder. See Lloyd NolandFound., Inc. v. City of Fairfield Healthcare Auth.,837 So.2d 253, 267 (Ala. 2002) ("`"There is an implied covenant that neither party shall do anything which will have the effect of destroying or injuring the rights of the other party to receive the fruits of the contract; . . . in every contract there exists an implied covenant of good faith and fair dealing."'" (quotingSellers v. Head, 261 Ala. 212, 73 So.2d 747, 751 (1954))). Seealso Restatement (Second) of Contracts § 205 (1981) ("Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.").
[6] In Cavalier, Clarke purchased a mobile home from Cedar Ridge Factory Outlet. At the time of the sale, Clarke and Cedar Ridge executed both a retail installment contract containing an arbitration clause and an "Agreement for Binding Arbitration." The Court stated that "Cedar Ridge argues correctly that a subsequent agreement — the "Agreement for Binding Arbitration' . . . — would supersede a prior agreement — the retail installment contract." 862 So.2d at 642. See also CMI International,251 Mich.App. at 130, 649 N.W.2d at 812.