798 So.2d 656 (2001)
Ex parte PALM HARBOR HOMES, INC., and Southern Lifestyle Manufactured Housing, Inc.
(Re Jon W. Knapp and Brooke L. Knapp v. Palm Harbor Homes, Inc., et al.)
1000201.
Supreme Court of Alabama.
April 20, 2001.
*657 Lee M. Hollis, Ivan B. Cooper, Anne Sikes Hornsby, and J. Chandler Bailey of Lightfoot, Franklin & White, L.L.C., Birmingham, for petitioner Palm Harbor Homes, Inc.
Richard M. Crump of Crump & Davis, Mobile, for petitioner Southern Lifestyle Manufactured Housing, Inc.
Edward P. Turner, Jr., and E. Tatum Turner of Turner, Onderdonk, Kimbrough & Howell, P.A., Chatom; and J. Jefferson Utsey, Butler, for respondents.
WOODALL, Justice.
Palm Harbor Homes, Inc. ("Palm Harbor"), and Southern Lifestyle Manufactured Housing, Inc. ("Southern Lifestyle"), petition this Court for a writ of mandamus directing the Honorable Washington Circuit Judge Harold L. Crow to vacate his order compelling arbitration of this dispute. We grant the petition in part.
This dispute arose out of an action commenced by Jon W. Knapp and Brooke L. Knapp, who purchased from Southern Lifestyle a mobile home manufactured by Palm Harbor. The facts are essentially undisputed. In connection with the purchase, the Knapps and Southern Lifestyle executed a document styled "Manufactured Home Retail Installment Contract and Security Agreement" (the "Installment Contract"). Three parties are prominently listed on the Installment Contract, namely, the Knapps, Southern Lifestyle, and the assignee, Green Tree Financial Corporation ("Green Tree").
The Installment Contract is dated September 19, 1998, and contains an arbitration clause, which states in pertinent part:
"ARBITRATION: ALL DISPUTES, CLAIMS OR CONTROVERSIES ARISING FROM OR RELATING TO *658 THIS CONTRACT OR THE PARTIES THERETO SHALL BE RESOLVED BY BINDING ARBITRATION BY ONE ARBITRATOR SELECTED BY YOU WITH MY CONSENT. THIS AGREEMENT IS MADE PURSUANT TO A TRANSACTION IN INTERSTATE COMMERCE AND SHALL BE GOVERNED BY THE FEDERAL ARBITRATION ACT AT 9 U.S.C. SECTION 1." (Capital letters in original.)
The Installment Contract also contained a merger clause, which provided: "This written Contract is the only agreement that covers my purchase of the property." Under "DEFINITIONS," the instrument stated: "`Contract' or `Agreement' means this Retail Installment Contract and Security Agreement." (Emphasis added.)
Dated that same day, however, was a separate instrument, styled "Alabama Arbitration Provision." Also dated September 19, 1998, was a third, separate instrument, styled "Agreement for Binding Arbitration" (collectively, the "free-standing instruments"). Both free-standing instruments were executed by the Knapps and Southern Lifestyle.
The Alabama Arbitration Provision provides in pertinent part:
"The parties to the Retail Installment Contract agree that any and all controversies or claims arising out of, or in any way relating to, the Retail Installment Contract ... will be settled solely by means of final and binding arbitration before the American Arbitration Association (AAA) in accordance with the rules and procedures of the AAA.

". . . .
"... The parties further agree that this Arbitration Provision inures to the benefit of and is intended for the benefit of the manufacturer of the mobile home as fully as if the manufacturer were a signatory to the Retail Installment Contract."
(Emphasis added.) The Agreement for Binding Arbitration provides in pertinent part:
"Buyer and Seller agree, covenant and consent, that any and all controversies or claims arising out of or in any way relating to the sale of the said mobile home and the negotiations leading up to the sale ... shall be settled solely by arbitration in accordance with the applicable Rules of the American Arbitration Association then in effect.... Buyer and Seller further agree that they shall submit any and all disputes, controversies and cases arising out [of] the negotiations for and the sale and service of the mobile home ... to the decision of a three-person arbitration panel. The arbitration panel shall be appointed by the applicable national panel of arbitrators in accordance with the American Arbitration Association's rules of appointment of such panel.
". . . .
"It is further agreed by the parties that all rights, privileges and responsibilities under this agreement shall expressly inure to the benefit of the manufacturer of the said mobile home insofar as any claims may exist or hereafter arise against the manufacturer, including but not limited to, enforcement of warranties, whether express or implied."
(Emphasis added.)
After allegedly experiencing difficulties with their mobile home, the Knapps sued Palm Harbor, Southern Lifestyle, and Green Tree. All three defendants moved to compel arbitration of the action.[1] On July *659 27, 2000, the trial court granted the motions.
On August 4, 2000, the Knapps filed a motion styled: "Plaintiff's Motion for the Court to Order Arbitration to be Conducted." The motion stated in pertinent part:
"1. The court ordered arbitration as to all defendants on July [27,] 2000.
". . . .
"3. There are two different arbitration clauses at issue in the above case.
"4. One clause calls for the use of the American Arbitration Association.
"5. One clause calls for Defendant Green Tree or Defendant Southern Lifestyles ... to select with the consent of Plaintiff.
"6. Plaintiff has the burden of beginning the arbitration process.
"7. Plaintiff does not know which clause to use.
"8. The American Arbitration Association requires up front fees to begin the process of arbitration.'
"9. The retail installment contract contains an integration clause which integrates all agreements into [it].

"10. Plaintiff does not have the up front fees to begin the process under the AAA.
"11. Under the [retail installment contract] plaintiff as well as defendant get[s] to participate in the selection process. If they cannot agree then the court an elected official would pick the arbitrator.
"12. Under the [retail installment contract] no up front fees are required.
". . . .
"Wherefore plaintiff would request the court to order the following:
"That said arbitration be held with[in] sixty days of the court's signed order directing plaintiff to use the arbitration clause in the retail installment contract. That the court consolidate these proceedings into one arbitration proceeding under the retail installment contract."
(Emphasis added.) On September 19, 2000, the trial court entered the following order:
"The Court Finds as Follows:
"1. The arbitration is to be held in accordance with the Retail Installment contract and security agreement in this matter.
"2. The Alabama Arbitration Act will apply.
"3. The arbitration is to be held within 60 days of this order.
"4. This proceeding is stayed and placed on the administrative docket until the court hears the final disposition of the arbitrator."
Palm Harbor and Southern Lifestyles seek a writ of mandamus directing the trial court to vacate this order.
It is well settled that a petition for a "writ of mandamus is the proper means by which to test a trial court's order compelling arbitration or an order staying proceedings pending arbitration." Ex parte Smith, 706 So.2d 704, 705 (Ala.1997); see also Long v. Industrial Dev. Bd. of the Town of Vincent, 619 So.2d 1387 (Ala. *660 1993); Ex parte Alexander, 558 So.2d 364, 365 (Ala.1990). However, a writ of mandamus is an extraordinary remedy, which requires the petitioner to demonstrate a clear, legal right to the relief sought, or an abuse of discretion. Ex parte Edgar, 543 So.2d 682, 684 (Ala.1989).
It is undisputed that there is a valid agreement to arbitrate. Palm Harbor and Southern Lifestyle contend, however, that "the trial court erred in ignoring the terms of the [free-standing arbitration instruments,] which specified that arbitration was to be administered by the American Arbitration Association." Petition for Writ of Mandamus, at 6. They also contend that the trial court erred in holding that the Alabama Arbitration Act applies. We first consider whether the trial court erred as to the agreement of the parties.

I. The Parties' Agreement
Palm Harbor and Southern Lifestyle contend that the trial court improperly denied them the right to arbitrate under the administration of the American Arbitration Association, which, they insist, was part of the final agreement as evidenced by the free-standing arbitration instruments. The Knapps, on the other hand, argue that, because the Installment Contract contained a merger clause, "the terms of the arbitration provision in [that instrument]" supersede the two free-standing arbitration provisions. Respondents' Brief, at 6. Thus, the only question is whether the agreement of the parties is embodied and memorialized in the Installment Contract, as the Knapps contend, or in one, or both, of the two free-standing instruments, as Palm Harbor and Southern Lifestyle insist. Stated another way: does the parol-evidence rule bar consideration of the free-standing arbitration instruments? We conclude that it does.[2]
As a general rule, "when parties reduce a contract to writing and intend that writing to be the complete contract, no extrinsic evidence of prior or contemporaneous agreements will be admissible to change, alter, or contradict the contractual writing." Sherman v. Woerner Magnolia Farms, Inc., 565 So.2d 601, 605 (Ala.1990). This is so, because, "all prior and contemporaneous negotiations are [deemed to be] merged" into that writing. Crimson Indus., Inc. v. Kirkland, 736 So.2d 597, 601 (Ala.1999) (emphasis in original).
"When a contract contains ... a merger clause, the agreement is deemed to be `integrated,' such that evidence of prior or contemporaneous agreements shall not be admitted to contradict the terms of the agreement." Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc., 162 F.3d 1290, 1309 (11th Cir.1998). Merger clauses thus create a presumption that the writing represents an integrated, that is, the final and complete, agreement of the parties. See Tallmadge Bros., Inc. v. Iroquois Gas Transmission Sys., L.P., 252 Conn. 479, 504, 746 A.2d 1277, 1291 n. 15 (2000). "In order to rebut the presumption and, in effect, invalidate the merger clause, a party must offer evidence to establish the existence of fraud, bad faith, unconscionability, negligent omission or mistake in fact." Smith v. Central Soya of Athens, Inc., 604 F.Supp. 518, 526 (E.D.N.C.1985). See also Lake Martin/Alabama Power Licensee Ass'n, Inc. v. Alabama Power Co., 601 So.2d 942, 945 (Ala.1992) ("When fraud in the inducement has been ruled out, ... all prior statements and negotiations are merged into the written contract and ... in the absence *661 of an ambiguity ..., parol evidence will not be received to explain, contradict, vary, add to, or subtract from the express terms of the written contract."). Whether a contract is integrated is ordinarily a question of law for the court to decide. Moore v. Pennsylvania Castle Energy Corp., 89 F.3d 791, 797 (11th Cir.1996); Associated Catalog Merchandisers, Inc. v. Chagnon, 210 Conn. 734, 740, 557 A.2d 525, 528 (1989); Walker v. Saricks, 360 Pa. 594, 599, 63 A.2d 9, 11 (1949); see also Hibbett Sporting Goods v. Biernbaum, 375 So.2d 431, 435 (Ala.1979).
Instructive in the arbitration context is Crown Pontiac, Inc. v. McCarrell, 695 So.2d 615, 618 (Ala.1997). In McCarrell, this Court affirmed an order denying arbitration on the ground that a merger clause in a "retail buyer's order form" barred consideration of a contemporaneously executed retail buyer's order form containing an arbitration clause. Although the buyer had signed both forms, the form containing the merger clause exhibited the buyer's signature in the section corresponding to the merger clause, but did not have a signature corresponding to the arbitration clause. Id. at 616-17. The Court agreed with the buyer that "the first retail buyer's order form did not become part of the agreement because ... the merger clause in the second form caused the terms in the first form to be superseded by the terms of the second one." Id. at 618. See Infiniti of Mobile, Inc. v. Office, 727 So.2d 42, 47 (Ala.1999) (a "merger clause in [a] second retail-buyer's-order form bar[red] the consideration of any previous agreements of the parties" and made an arbitration provision in the second retail-buyer's-order form enforceable as "the final contract of the parties"); Ex parte Conference America, Inc., 713 So.2d 953 (Ala.1998); see also Lakehead Pipe Line Co. v. Investment Advisors, Inc., 900 F.Supp. 234 (D.Minn. 1995).
In this case, of course, although all three instruments are signed by the Knapps and contain arbitration provisions, only the Installment Contract contains a merger clause. Were we to ignore the merger clause, however, we would still observe that the Installment Contract appears on its faceto be a fully integrated agreement. It contains all the terms necessary and convenient to the contract, including (1) a full description of the mobile home; (2) the identities of the buyers, the manufacturer, the seller, and the assignee-financer; (3) the price and terms of financing; (4) an agreement regarding insurance; (5) the assignment; (6) the signatures of Southern Lifestyle and the Knapps; and (7) an arbitration provision. By contrast, the only substantive provisions contained in the free-standing instruments are those that, for the most part, vary and contradict the arbitration provision contained in the Installment Contract.
Significantly, Palm Harbor and Southern Lifestyle have not attempted to showor contendedthat the Installment Contract was the result of "fraud, bad faith, unconscionability, negligent omission or mistake in fact," Smith, 604 F.Supp. at 526, or overreaching or duress on the part of the Knapps. On the contrary, it is abundantly clear that the Knapps did not draft any of the disputed instruments. The boilerplate provisions were inserted in these instruments by these defendants. Had they so desired, the defendant-drafters could easily have included in the merger clause a specific reference to either of the free-standing instruments, thus identifying the instrument as a part of the integrated agreement. They did not do so. Moreover, it is a familiar rule of contract construction that "any ambiguity must be construed against the drafter of the contract. See Lackey v. Central Bank of the *662 South, 710 So.2d 419, 422 (Ala.1998)." Homes of Legend, Inc. v. McCollough, 776 So.2d 741, 746 (Ala.2000).
In short, the trial court was not permitted to consider the arbitration provisions in the free-standing instruments. Thus, Palm Harbor and Southern Lifestyle have failed to demonstrate that the trial court erred in holding that "arbitration is to be held in accordance with the Retail Installment contract and security agreement," and, consequently, that they have a clear, legal right to relief from that holding. Indeed, Palm Harbor and Southern Lifestyle only mention the merger issue in passing and cite no relevant authority. Under the posture of this case, therefore, insofar as the trial court ordered arbitration "to be held in accordance with the Retail Installment contract and security agreement," the petition is denied.

II. The Alabama Arbitration Act
The second objection of Palm Harbor and Southern Lifestyle to the trial court's order stands on better ground. It held the Alabama Arbitration Act, Ala. Code 1975, § 6-6-1 et seq., to be applicable. In this respect, it erred. The Installment Contract provided: "THIS AGREEMENT IS MADE PURSUANT TO A TRANSACTION IN INTERSTATE COMMERCE AND SHALL BE GOVERNED BY THE FEDERAL ARBITRATION ACT AT 9 U.S.C. SECTION 1." (Capital letters in original.) The parties' agreement to be governed by the Federal Arbitration Act is express and clear. Indeed, the Knapps concede that there is no legal basis for the application of the Alabama Arbitration Act. Palm Harbor and Southern Lifestyle have thus shown a clear, legal right to relief from that portion of the order. As to that portion of the order, therefore, the petition is granted.
PETITION GRANTED IN PART AND DENIED IN PART; AND WRIT ISSUED.
MOORE, C.J., and HOUSTON, LYONS, BROWN, HARWOOD, and STUART, JJ., concur.
SEE, J., concurs in part, concurs in the result in part, and dissents in part.
SEE, Justice (concurring in part, concurring in the result in part, and dissenting in part).
I concur in Part II of the main opinion, because the arbitration provision in the Installment Contract clearly states that the dispute is to be governed by the Federal Arbitration Act; however, as to Part I, I concur in the result in part and dissent in part.
Southern Lifestyle argues that it is named in the Installment Contract as the seller, but that Green Tree and the Knapps are the only parties to whom the Installment Contract applies. I disagree. The only signatories to the Installment Contract are the Knapps and Southern Lifestyle; therefore, both the Knapps and Southern Lifestyle are clearly parties to the Installment Contract, and Green Tree is not.[3] The main opinion concludes, however, that because of the merger clause in the Installment Contract, the free-standing arbitration agreements must be excluded from consideration.
*663 I disagree with the main opinion. I conclude that the language in the Installment Contract does not constitute a merger clause. Thus, I believe the trial court properly considered both the Installment Contract and the free-standing arbitration agreements, and I believe there is sufficient evidence to support a finding that the arbitration provision in the Installment Contract controls the dispute between the Knapps and Southern Lifestyle. The Knapps and Southern Lifestyle on the same day signed both the Installment Contract and the free-standing arbitration agreements. Southern Lifestyle provided no evidence indicating that the free-standing arbitration agreements were executed after the Installment Contract was executed, so that they would be modifications or amendments of the Installment Contract.[4] Therefore, Southern Lifestyle has not demonstrated a clear, legal right to the relief sought, nor has it demonstrated that the trial court exceeded its discretion in concluding that the arbitration provision in the Installment Contract controls the dispute between Southern Lifestyle and the Knapps. Ex parte Edgar, 543 So.2d 682, 684 (Ala.1989).
I respectfully dissent from the main opinion's conclusion that the trial court was within its discretion to compel Palm Harbor to arbitrate under the Installment Contact. Palm Harbor was not a signatory to the Installment Contract,[5] and, therefore absent a showing that there was a proper assignmentis not a party to that agreement. The only reference to Palm Harbor in the Installment Contract is a reference to it as the manufacturer of the home. It is a cardinal principle of federal arbitration law that "`arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" AT & T Techs., Inc. v. Communications Workers of America, 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (quoting United Steelworkers v. Warrior & Gulf Navig. Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960)). Thus, because Palm Harbor did not agree to submit to arbitration and is not seeking the benefit of the contract,[6] it cannot be compelled to arbitrate as if it were a signatory to the Installment Contract.
Therefore, I would deny the petition for the writ of mandamus as to Southern Lifestyle but grant it as to Palm Harbor. I would direct the trial court to vacate its order compelling Palm Harbor to arbitrate under the Installment Contract and to determine *664 whether Palm Harbor may compel arbitration under the free-standing arbitration agreements.
NOTES
[1] Palm Harbor signed no agreement. It based its motion to compel arbitration on the clauses in the free-standing instruments "inur[ing] to the benefit of the manufacturer." On that basis, it argued that it was "an express third party beneficiary of both arbitration agreements," and contended that it was consequently "entitled to enforce the arbitration agreements."
[2] In order to resolve this dispute, we resort to ordinary principles of contract law and contract construction. Beaver Constr. Co. v. Lakehouse, L.L.C., 742 So.2d 159, 163 n. 3 (Ala. 1999); Georgia Power Co. v. Partin, 727 So.2d 2, 5 (Ala.1998).
[3] Absent a second party, the Knapps are without a contract, because there is no party except Southern Lifestyle with whom they could have been contracting. The question whether the installment contract was later assigned is not before us, but, if it was, the assignee could receive no more than the assignor possessed. If the argument is that Southern Lifestyle was a party only for the purpose of later assigning the contract to Green Tree, then Southern Lifestyle must have been fully a party or it had no contract rights to assign.
[4] The Installment Contract provides that "[t]his Contract can only be modified or amended ... by a written modification of this Contract signed by [Southern Lifestyle]."
[5] It is true that this Court has held that a nonsignatory may compel a signatory to arbitrate when the claims brought by the signatory against the nonsignatory are "inextricably intertwined" with the claims by the signatory against another signatory to the arbitration agreement. See Southern Energy Homes, Inc. v. Gary, 774 So.2d 521, 527 (Ala.2000). However, I am unaware of any precedent under which a court may compel a nonsignatory who is not seeking the benefit of the contract (see note 6 below) to arbitrate the claims brought against it by a signatory. I believe that for a court to do so would violate the principle that "`arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" AT & T Techs., Inc. v. Communications Workers of America, 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986).
[6] Under the Federal Arbitration Act a nonsignatory may be compelled to arbitrate when that nonsignatory claims the benefit of the contract, thereby accepting both the benefits and the responsibilities of the contract that contains the arbitration provision. See Ex parte Dyess, 709 So.2d 447, 451-52 (Ala. 1997).