Harbor Village Home Center, Inc., appeals from the trial court's order compelling it to arbitrate the claims filed against it by the plaintiff Curtis Thomas. We reverse and remand.
 Facts and Procedural History
On March 31, 2000, Thomas purchased from Harbor Village a new mobile home manufactured by Buccaneer Homes of Alabama, Inc. In connection with the purchase, Thomas and Harbor Village executed three different documents, each of which contained an arbitration provision: a document entitled "Retail Installment Contract, Security Agreement, Waiver of Trial by Jury, and Agreement to Arbitration or Reference or Trial by Judge Alone" ("the retail contract"); a document entitled "Acknowledgment and Agreement" ("the acknowledgment"), which Buccaneer also executed; and a document entitled "Agreement for Binding Arbitration and Waiver of Jury Trial" ("the freestanding arbitration agreement"). The arbitration provision in the retail contract provided, in part:
"ARBITRATION OF DISPUTES AND WAIVER OF JURY TRIAL:
 "a. Dispute Resolution. Any controversy or claim between or among you and me or our assignees arising out of or relating to this Contract or any agreements or instruments relating to or delivered in connection with this Contract, including any claim based on or arising from an alleged tort, shall, if requested by either you or me, be determined by arbitration, reference, or trial by a judge as provided below. . . . YOU AND I AGREE AND UNDERSTAND THAT WE ARE GIVING UP THE RIGHT TO TRIAL BY JURY, AND THERE SHALL BE NO JURY *Page 813 
WHETHER THE CONTROVERSY OR CLAIM IS DECIDED BY ARBITRATION, BY JUDICIAL REFERENCE, OR BY TRIAL BY A JUDGE.
 "b. Arbitration. Since this Contract touches and concerns interstate commerce, an arbitration under this Contract shall be conducted in accordance with the United States Arbitration Act (Title 9, United States Code), notwithstanding any choice of law provision in this Contract. The Commercial Rules of the American Arbitration Association (`AAA') also shall apply. . . ."
The retail contract also included two different merger or integration clauses:
 "This Contract is the entire agreement between us and I agree that no oral or implied representations have been made to induce me to enter into this Contract."
 "YOU AND I HAVE READ AND FULLY UNDERSTAND THIS CONTRACT, INCLUDING THE PARAGRAPH CALLING FOR RESOLVING DISPUTES BY ARBITRATION, REFERENCE, OR TRIAL BY A JUDGE, AND NOT BY JURY TRIAL, AND AGREE THAT THIS CONTRACT SETS FORTH OUR ENTIRE AGREEMENT AND THAT NO OTHER PROMISES HAVE BEEN MADE."
(Capitalization in original.)[1]
The arbitration provision in the acknowledgment provided:
 "All parties hereto acknowledge and agree that this Agreement and the performance of the transactions contemplated hereby evidence transactions which involve a substantial nexus with interstate commerce. Accordingly, any dispute, controversy or claim of any kind or nature which has arisen or may arise between the parties, their successors, assigns, heirs, representatives, parents companies, divisions, subsidiaries, affiliates, officers, directors, employees, agents, and contractors, (including any dispute, controversy or claim relating to the validity of this arbitration clause), whether arising out of past, present or future dealings between the parties, their successors, assigns, heirs, representatives, parents companies, divisions, subsidiaries, affiliates, officers, directors, employees, agents, and contractors, shall be governed by the Federal Arbitration Act and shall be settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof. Such arbitration proceedings shall be held at the principal place of business of [Buccaneer] or at such other location as shall be designated by [Buccaneer], and shall be heard by an arbitrator who is either a(i) retired judge or (ii) practicing attorney who has conducted more than three (3) arbitrations during the proceeding five (5) years. . . . EACH OF THE PARTIES HERETO WAIVES ANY RIGHT TO A JURY TRIAL WITH RESPECT TO ANY CONTROVERSY BETWEEN THE PARTIES, THEIR SUCCESSORS, ASSIGNS, HEIRS, REPRESENTATIVES, PARENT COMPANIES, DIVISIONS, SUBSIDIARIES, AFFILIATES, OFFICERS, DIRECTORS, *Page 814 
EMPLOYEES, AGENTS, AND CONTRACTORS."
(Capitalization in original.) The acknowledgment also contained a merger clause; that clause provided: "This agreement constitutes the entire agreement between the parties with respect to the subject matter hereof, supersedes any oral or written understanding or agreement between the parties with respect to the subject matter hereof and may not be amended or altered except by written agreement signed by the parties."[2]
The freestanding arbitration agreement stated, in part:
 "As part of the consideration for the sale of said mobile home, Buyer and Seller for themselves, their heirs, successors and assigns, hereby enter this Agreement for Binding Arbitration and for Waiver of Jury Trial in the event of any unresolved dispute in any way arising from the purchase and sale of the above described mobile home, each intending and agreeing to be mutually bound by the terms of this Agreement.
". . . .
 "2. All disputes, claims or controversies in any manner arising from the transaction of sale and purchase of the mobile home described herein, or from the relationships which result from the transaction between the Buyer and Seller, including this arbitration by one arbitrator who is to be selected by the Seller or by the Seller's assignee with the consent of the Buyer."
(Emphasis added.) The freestanding arbitration agreement does not contain a merger clause.
After purchasing the mobile home, Thomas discovered numerous alleged defects. He then sued Buccaneer and Harbor Village in the Washington Circuit Court, alleging fraud, breach of express and implied warranties, and violation of the Magnuson-Moss Warranty-Federal Trade Commission Improvement Act,15 U.S.C. § 2301 et seq. The complaint also alleged a negligence claim against Harbor Village.
Buccaneer and Harbor Village removed the action to federal court. While the case was pending in that court, both Buccaneer and Harbor Village moved to compel arbitration. Thomas filed a brief in opposition to their motions to compel arbitration. However, the federal court remanded the case to the Washington Circuit Court without ruling on the motions.
After remand, Buccaneer and Harbor Village each filed motions in the Washington Circuit Court to compel arbitration. Specifically, Harbor Village asked the circuit court to enter an order "compelling the parties to the controversy to submit all claims and causes of action in this present case to binding arbitration before the American Arbitration Association. . . ." Harbor Village also included with its motion copies of the arbitration provisions and a supporting affidavit. Thomas filed a response to Buccaneer's motion only, but filed a motion to strike the affidavit filed in support of Harbor Village's motion. Thomas also sent a letter to the trial court arguing that even if the court compelled arbitration, arbitration did not have to be conducted under the Commercial Arbitration Rules of the American Arbitration Association (hereinafter "the AAA rules"). Harbor Village says that a copy of a proposed order was attached to this letter; the copy of the letter included in the record, however, includes no such order. *Page 815 
On August 27, 2002, the trial court issued an order in response to the motions to compel arbitration filed by Buccaneer and Harbor Village.[3] The order stated, in part:
 "The agreement for arbitration between the buyer and the seller requires that all disputes, claims, or controversies in any manner arising from the transaction shall be resolved by one arbitrator selected by the seller with the consent of the buyer and selected and agreed upon by both the buyer and seller.
". . . .
 "On the motions of the defendants, Buccaneer Homes of Alabama, Inc. and Harbor Village Home Center, Inc., to compel this cause to arbitration and based on the pleadings, affidavits, and arguments before this Court, it is hereby
 "ORDERED, ADJUDGED and DECREED, that Curtis Thomas is entitled to a jury trial against [Buccaneer] for the express warranty claims and the claims brought pursuant to the Magnuson-Moss Warranty Act;
 "And further, it is ORDERED, ADJUDGED and DECREED, that the other claims filed in this Court between the parties, including the implied warranty claims, be and the same hereby are sent to arbitration pursuant to the terms of the agreements for arbitration."
Harbor Village then filed a motion pursuant to Rule 59(e), Ala. R. Civ. P., to alter, amend, or vacate the trial court's August 27 order, claiming that the trial court erred in ordering arbitration under the freestanding arbitration agreement instead of under the retail contract or the acknowledgment. The trial court denied this motion on October 28, 2002. Harbor Village appeals.[4]
 Standard of Review "This Court's review of an order granting a motion to compel arbitration is de novo. See W.D. Williams, Inc. v. Ivey, 777 So.2d 94 (Ala. 2000); Patrick Home Ctr., Inc. v. Karr, 730 So.2d 1171 (Ala. 1999). Therefore, this Court must determine `whether the trial judge erred on a factual or legal issue to the substantial prejudice of the party seeking review.' Ex parte Roberson, 749 So.2d 441, 446 (Ala. 1999)."
BankAmerica Housing Servs. v. Lee, 833 So.2d 609, 617 (Ala. 2002).
 Discussion I.
Harbor Village argues that the trial court failed to apply standard principles of contract interpretation in ordering arbitration in this case. Specifically, Harbor Village claims that the trial court, in ordering that the arbitrator be selected by "the seller with the consent of the buyer and selected and agreed upon by both the buyer and seller," erroneously compelled arbitration under the freestanding arbitration agreement. Harbor Village argues that the trial court should have instead compelled arbitration under the retail contract and the acknowledgment, which call for arbitration under the AAA rules. Those rules, Harbor Village argues, set out a procedure for selecting an arbitrator different from the procedure found in the freestanding arbitration agreement.
The three documents executed by Thomas and Harbor Village in conjunction *Page 816 
with Thomas's purchase of the mobile home set out three different arbitration procedures.[5] The retail contract and the acknowledgment, however, contain merger clauses that, Harbor Village argues, prevent the trial court from considering the freestanding arbitration agreement.
A merger clause, also known as an integration clause, "is a portion of a particular contract that restates the rationale of the parol evidence rule within the terms of the contract."Environmental Sys., Inc. v. Rexham Corp., 624 So.2d 1379, 1383
(Ala. 1993). These clauses "are properly used to ensure that preliminary negotiations, whether oral or written[,] are either memorialized in the final contract or are not considered part of it." Crown Pontiac, Inc. v. McCarrell, 695 So.2d 615, 618 (Ala. 1997). Moreover, a merger clause "establish[es] that a written agreement is a completely integrated document, into which allprior and contemporaneous negotiations are merged." CrimsonIndus., Inc. v. Kirkland, 736 So.2d 597, 601 (Ala. 1999). "Merger clauses thus create a presumption that the writing represents an integrated, that is, the final and complete, agreement of the parties." Ex parte Palm Harbor Homes, Inc.,798 So.2d 656, 660 (Ala. 2001).
Whether a contract is integrated is ordinarily a question of law for the court. Palm Harbor Homes, 798 So.2d at 661. In this case, we are presented with two documents purporting to be the entire, complete, and final agreement of the parties — the retail contract and the acknowledgment.
We hold that the retail contract is the only fully integrated agreement between Harbor Village and Thomas. First, the retail contract contains all of the terms necessary to the contract, including a description of the mobile home, the identities and signatures of the parties, the price of the mobile home and the terms of the financing, the assignment, and an arbitration provision. The inclusion of these necessary details indicates that the retail contract is the fully integrated agreement. SeePalm Harbor Homes, 798 So.2d at 661 (holding that an installment contract, even if the merger clause were to be ignored, appeared to be a fully integrated agreement of a purchase of a mobile home because it contained the essential terms detailing the transaction).[6] Moreover, the retail contract contains a merger clause, which creates a "presumption" that the *Page 817 
writing is the final and complete agreement of the parties. PalmHarbor Homes, 798 So.2d at 660.
Additionally, it is clear that neither the freestanding arbitration agreement nor the acknowledgment is the fully integrated agreement of the parties. First, we note that the freestanding arbitration agreement, unlike the retail contract and the acknowledgment, does not contain a merger clause. Harbor Village argues, citing Ex parte Palm Harbor Homes, supra, that it should thus be excluded from consideration by the trial court. In Palm Harbor Homes, the parties in purchasing a mobile home contemporaneously executed a retail contract, which contained an arbitration clause, and two freestanding arbitration agreements. 798 So.2d at 657-59. The retail contract, unlike the freestanding agreements, contained both a merger clause and all the terms necessary to complete the purchase. However, the terms of the freestanding arbitration agreements contradicted the terms of the arbitration clause found in the retail contract. In determining which arbitration provision controlled, this Court held that the merger clause in the retail contract established that the retail contract represented the entire agreement between the parties and superseded the freestanding arbitration agreements. 798 So.2d at 660-62.
Like the freestanding arbitration agreements in Palm Harbor, the freestanding arbitration agreement in this case does not set forth any terms of the purchase of the mobile home and does not contain a merger clause. Therefore, it is superseded by the retail contract, and the trial court erred in ordering arbitration under the terms of the freestanding arbitration agreement.
Similarly, we conclude that the acknowledgment, despite the fact that it contains a merger clause, is not the final and complete agreement of the parties. As its name implies, the document simply recites certain acknowledgments made by the parties, e.g., that Thomas had received certain documents and notices, that he acknowledged the identity of the parties, and that he had inspected and was satisfied with the mobile home. It also contains an arbitration provision. It does not, however, specify the purchase price, the financing arrangements, the identity of the assignee, or other essential terms of the purchase. Therefore, we hold that the retail contract, and not the acknowledgment, is the fully integrated agreement between the parties.
Because the retail contract is the only fully integrated agreement entered into by the parties, we presume that all prior and contemporaneous negotiations are merged into it. Thus, the conflicting terms of the acknowledgment and freestanding arbitration agreement, including their arbitration provisions, are extinguished by the retail contract. See 11 Richard A. Lord,Williston on Contracts, § 33:26 (4th ed. 1999) (evidence of collateral agreements is barred by a merger clause if such evidence contradicts the written contract).
A trial court may compel arbitration only in a manner consistent with the terms of the arbitration agreement entered into by the parties. BankAmerica Hous. Servs. v. Lee, 833 So.2d at 618. The retail contract in this case calls for arbitration to be conducted under the AAA rules, thereby incorporating those rules into the contract by reference. See BankAmerica Hous.Servs., 833 So.2d at 615 (holding that an arbitration provision, which recited that the Commercial Rules of the American Arbitration Association shall apply to the arbitration proceedings, incorporated those rules by reference, making them applicable to the parties). Therefore, the trial court's order compelling arbitration in *Page 818 
a manner not in accordance with the AAA rules is erroneous.
 II.
Thomas argues that this Court should affirm the trial court's order because arbitration conducted under the AAA rules would be unconscionable. We disagree.
It is well settled that a motion to compel arbitration is treated procedurally as a motion for a summary judgment. Lewisv. Conseco Fin. Corp., 848 So.2d 920, 922 (Ala. 2002) ("`A motion to compel arbitration is analogous to a motion for a summary judgment.'" (quoting Fleetwood Enters., Inc. v. Bruno,784 So.2d 277, 280 (Ala. 2000))); see also Brookfield Constr.Co. v. Van Wezel, 841 So.2d 220 (Ala. 2002). A party opposing arbitration on the ground of unconscionability has the duty of proving that affirmative defense. Conseco Fin. Corp. v. Boone,838 So.2d 370, 373 (Ala. 2002). Harbor Village filed a motion to compel arbitration specifically seeking to compel arbitration under the AAA rules. Once Harbor Village made its prima facie showing in support of its motion for arbitration, the burden shifted to Thomas to present evidence indicating that the arbitration agreements were not valid or that they did not apply to the dispute in question. Vann v. First Cmty. Credit Corp.,834 So.2d 751, 753 (Ala. 2002).
Thomas filed no response to Harbor Village's motion to compel arbitration. Instead, he responded only to Buccaneer's motion, and even in that response he did not argue that the arbitration agreements were unconscionable because they called for arbitration under the AAA rules.[7] In fact, Thomas first argued that arbitration under the AAA rules was unconscionable in his pleadings filed in response to Harbor Village's Rule 59(e), Ala. R. Civ. P., motion, well after the trial court compelled arbitration as to his claim against Harbor Village.
An affirmative defense, including unconscionability, not pleaded before the trial court's ruling on a motion for a summary judgment or a motion to compel arbitration is deemed waived and will not be considered by this Court. Ryan's Family SteakHouses, Inc. v. Regelin, 735 So.2d 454, 457 n. 1 (Ala. 1999) ("the propriety of a ruling on a motion to compel arbitration, like the propriety of a ruling on a summary-judgment motion, must be tested by reviewing the pleadings and the evidence the trial court had before it when it ruled"). See also Mardis v. FordMotor Credit Co., 642 So.2d 701, 705 (Ala. 1994) (noting that "`[t]he trial court can consider only that material before it at the time of submission of [a] motion [for a summary judgment]' and that `[a]ny material filed after submission of the motion comes too late.'" (quoting Guess v. Snyder, 378 So.2d 691, 692
(Ala. 1979))); Purvis v. PPG Indus., Inc., 502 So.2d 714, 716
(Ala. 1987) (holding that this Court will not consider on appeal evidence and facts submitted to a trial court after it has entered a summary judgment). Thomas did not argue in response to the motion to compel arbitration that arbitration under the AAA rules is unconscionable; therefore, that issue is waived.
 Conclusion
The trial court erred in ordering arbitration under the terms of the freestanding arbitration agreement; instead, the trial court should have ordered arbitration pursuant *Page 819 
to the terms of the retail contract. Moreover, Thomas has waived his argument that arbitration under the retail contract is unconscionable. Therefore, we reverse the trial court's order and remand the cause.
REVERSED AND REMANDED.
HOUSTON, SEE, LYONS, JOHNSTONE, HARWOOD, WOODALL, and STUART, JJ., concur.
[1] We note that this Court has previously treated identical language as a merger clause. See Ronnie Smith's Home Ctr., Inc.v. Luster, 845 So.2d 764 (Ala. 2002).
[2] In Belmont Homes, Inc. v. Law, 841 So.2d 237, 239 (Ala. 2002), this Court recognized a virtually identical clause at issue in that case as a merger clause.
[3] Harbor Village claims that this order was identical to the proposed order submitted by Thomas.
[4] Buccaneer is not a party to this appeal. Additionally, Thomas has not challenged on cross-appeal the trial court's order to compel arbitration.
[5] Harbor Village incorrectly claims that enforcement of the arbitration provisions in both the retail contract and the acknowledgment would lead to the same result, namely, that the AAA rules would control in the selection of the arbitrator. We note that the acknowledgment sets forth certain qualifications for the arbitrator — that the arbitrator be a retired judge or an attorney with certain prior arbitration experience. Those qualifications are not found in the copy of the AAA rules contained in the record. The retail contract contains no such restrictions or qualifications.
[6] Indeed, we note that Thomas, in his opposition to the motions to compel arbitration filed in the federal court, stated:
 "If the Court refuses to strike all arbitration clauses that the plaintiff was required to sign, then arbitration should be held in accordance with the [retail contract]. No extrengent [sic] evidence of prior or contemporaneous agreements will be admissible to change, alter, or contradict the [retail contract]. All prior and contemporaneous negotiations are deemed to be merged into that writing.
 "The [retail contract] was a fully integrated contract that includes all of the terms necessary for the contract. . . . [P]laintiff requests the Court to deny defendant's request for arbitration, or, in the alternative, order arbitration pursuant to the [retail contract]. . . ."
(Citations omitted.)
[7] Instead, Thomas generally alleged that the arbitration provision contained in the acknowledgment was unconscionable because its terms were grossly favorable to Buccaneer and because Thomas possessed no bargaining power in his transaction with Buccaneer.