986 So.2d 1145 (2007)
Ex parte PARTNERS IN CARE, INC.
(In re Sandra Sherman and Leslie Nobles
v.
Partners in Care, Inc.).
1061261.
Supreme Court of Alabama.
December 7, 2007.
*1146 John C.S. Pierce and Carin D. Brock of Butler Pappas Weihmuller Katz Craig, LLP, Mobile; and Thomas S. Spires & Todd Neal Hamilton of Smith, Spires and Peddy, P.C., Birmingham, for petitioner.
C. Carter Clay and Michael C. Bradley of Pittman, Dutton, Kirby & Hellums, P.C., Birmingham, for respondents Sandra Sherman and Leslie Nobles.
Max Cassady of Cassady & Cassady, P.C., Fairhope; and William D. Melton, Evergreen, for respondents Rebekah Baker, Patricia Crook, Marshelia Evans, Mattie Jones, Ronald Jones, Barry Likely, Loretta Pugh, and Anita White.
Abner R. (Ab) Powell III of the Powell Law Firm, P.C., Andalusia, for respondents Vincent Brundidge, Stephen Burrell, D.J. Frye, Bama Lee Hendrix, Billy J. Jackson, Joni Lambert, Tia Logsdon, and Barbara McCreary.
David G. Wirtes, Jr., and George M. Dent III of Cunningham, Bounds, Crowder, Brown & Breedlove, L.L.C., Mobile, for amicus curiae Alabama Association for Justice, in support of respondents.
R. Bruce Barze, Jr., of Balch & Bingham, Birmingham; and Doy Leale McCall III of Hill, Hill, Carter, Franco, Cole & Black, P.C., Montgomery, for amicus curiae Alabama Defense Lawyers Association, in support of the petitioner.
BOLIN, Justice.
Partners in Care, Inc. ("PIC"), the defendant in multiple actions alleging that it produced a defective drug that injured the recipients of the drug, petitions this Court for a writ of mandamus directing the Mobile Circuit Court and the Conecuh Circuit Court, in separate actions, to vacate their orders denying PIC's motions for a change *1147 of venue, for a more definite statement, and to enter a protective order, all made pursuant to the Alabama Medical Liability Act, § 6-5-480 et seq., Ala.Code 1975 ("the AMLA"), and to grant those motions. We deny the petition.

I.
PIC, a business based in Shelby County, is licensed by the Alabama State Board of Pharmacy as both a traditional retail pharmacy and as a manufacturer/wholesaler/distributor of drugs. In November and December 2006, PIC produced a faulty batch of generic injectable betamethasone, a steroid commonly used in the treatment of arthritis, sinusitis, and other conditions. The betamethasone was shipped to physicians in various parts of Alabama for use in treating their patients. After those physicians began using the PIC-produced betamethasone in their practice, some of the patients who received injections of the medication had adverse reactions to it. It was later determined that there was a problem with the batch of betamethasone PIC had produced, and the batch was recalled.
Lawsuits were subsequently filed against PIC by individuals in Jefferson County,[2] Mobile County, and Conecuh County, who all alleged that they had been injured by the PIC-produced betamethasone. Those plaintiffs stated their claims as product-liability claims made pursuant to the Alabama Extended Manufacturer's Liability Doctrine; however, PIC subsequently moved each of the trial courts to treat the claims as medical-liability claims under the AMLA and to transfer the cases to Shelby County, to require the plaintiffs to file a more definite statement, and to enter a protective order in accordance with the provisions of the AMLA.[3] The Jefferson Circuit Court granted PIC's motion to transfer and transferred the cases pending in its court to Shelby County, where PIC had produced the batch of betamethasone that allegedly caused the injuries. However, the Mobile Circuit Court and the Conecuh Circuit Court denied PIC's motions. PIC now petitions this Court to issue a writ of mandamus directing the Mobile Circuit Court and the Conecuh Circuit Court to vacate their orders denying PIC's motions for a change of venue, motions for a more definite statement, and motions to enter a protective order, and to enter orders granting those motions. We deny PIC's petition.

II.
A writ of mandamus is an extraordinary remedy, and a petitioner seeking such a writ must demonstrate a clear, legal right to the relief sought. Ex parte Palm Harbor Homes, Inc., 798 So.2d 656, 660 (Ala.2001). In the instant case, PIC has a clear, legal right to have its motions granted only if it can establish that the plaintiffs' claims are indeed subject to the AMLA. That inquiry in turn hinges on *1148 whether PIC is a "health-care provider" within the meaning of the AMLA.
The AMLA defines a "health care provider" as "[a] medical practitioner, dental practitioner, medical institution, physician, dentist, hospital, or other health care provider as those terms are defined in Section 6-5-481." § 6-5-542(1), Ala.Code 1975. PIC does not dispute that it is not a "medical practitioner," a "dental practitioner," a "medical institution," a "physician," a "dentist," or a "hospital," as those terms are defined in § 6-5-481; thus, the question becomes whether PIC falls within the definition of "other health care providers" in that section.
Section 6-5-481(8) defines "other health care providers" as "[a]ny professional corporation or any person employed by physicians, dentists, or hospitals who are directly involved in the delivery of health care services." This Court on multiple previous occasions has considered whether an individual or corporation is an "other health care provider" entitled to the protections of the AMLA; however, our interpretation of § 6-5-481(8) has not always been uniform. In some cases, we have considered whether the corporation or person seeking to be considered an "other health care provider" is itself "directly involved in the delivery of health care services," while in other cases we have read the phrase "who are directly involved in the delivery of health care services" as describing the physician, dentist, or hospital that employs the corporation or person seeking to be considered an "other health care provider." Compare Wilson v. American Red Cross, 600 So.2d 216, 218 (Ala.1992) (holding that the Red Cross was an "other health care provider," in part because it was "directly involved in the delivery of health care services"), with Anderson v. Alabama Reference Labs., 778 So.2d 806, 810 (Ala.2000)(holding that a medical laboratory was an "other health care provider" because its testing of a specimen was an integral part of the physician's delivery of health-care services to the patient). We also at one time interpreted the term "employed" as it is used in § 6-5-481(8) to require an employment or contractual relationship between the corporation or person seeking to be considered an "other health care provider" and a physician, dentist, or hospital, while we have more recently recognized that the physician, dentist, or hospital need only have "used" the corporation or person seeking to be considered an "other health care provider." Compare Ex parte Main, 658 So.2d 384, 387 (Ala. 1995) (holding that a registered nurse was an "other health care provider" because her contractual relationships with a hospital and physician were "sufficiently analogous to employment relationships"), with Cackowski v. Wal-Mart Stores, Inc., 767 So.2d 319, 324-25 (Ala.2000) (construing "employed" to apply to a person of whom the physician makes use or whose services the physician engages).
However, although perhaps not perfectly consistent, our caselaw considering § 6-5-481(8), and especially our more recent decisions such as Cackowski and Anderson, generally stand for the following proposition: a corporation or person seeking to be considered an "other health care provider" under the AMLA need not prove an employer/employee relationship or a contractual relationship with a physician, dentist, or hospital to establish that it or he is "employed" by a physician, dentist, or hospital, although such a relationship would certainly fall within the statute; however, at a minimum a physician, dentist, or hospital must have made use of that corporation or person in the physician's, dentist's, or hospital's delivery of health-care services to the plaintiff-patient. Thus, our ultimate inquiry in the present *1149 case is whether the physicians who injected their patients with the PIC-produced and distributed betamethasone were somehow "using" PIC to deliver health-care services to those patients. The facts as they have been submitted to this Court confirm that they were not using PIC in that fashion.
Because Cackowski also considered whether a pharmacist was an "other health care provider," it is instructive to compare the facts in that case to those here. The Court stated in Cackowski:
"An individual goes to a physician for treatment of a physical complaint. Upon examining the patient, the physician may determine that a course of medication is necessary to treat the patient's condition. Accordingly, the physician writes out a prescription, which the patient takes to the pharmacy of his choice to be filled. Although it is the physician who prescribes the medication, it is only a pharmacist/pharmacy that can fill the prescription, by supplying the patient with the called-for medication. See § 34-23-1(17) and (18), Ala. Code 1975. Because a pharmacist and/or a pharmacy is inextricably linked to a physician's treatment of his patients, the dispensing of drugs is an integral part of the delivery of health care services to the public. For this reason, we conclude that a pharmacist is within the definition of `other health care provider' set out in § 6-5-481(8), Ala. Code 1975."
767 So.2d at 325. Thus, in Cackowski, the physician examined a patient and decided on a course of treatment that included a prescription for medicine that could then only be obtained from a pharmacy. The physician's treatment, that is, his delivery of health-care services, could not be completed without the intervening service (the dispensing of drugs) offered by the pharmacy. The physician in Cackowski was, therefore, using the pharmacy's services to complete the delivery of health-care services to that patient.
In contrast, the physicians in the present case did not rely on PIC to assist them in delivering health-care services to their patients. Rather, those patients sought treatment from their physicians, and the physicians immediately treated them in-office by administering an injection of betamethasone, which the physicians had purchased beforehand. Notably, there was no intervening act by PIC that enabled the physician to complete the delivery of the health-care services; the "inextricable link[]" that was present in Cackowski is absent. The link between the physician's treatment and the patient in this case was a direct one, and the physician in no way used or employed PIC to complete the delivery of health-care services to that patient.
PIC's arguments that it should be considered an "other health care provider" are not persuasive. Citing Cackowski and Ex parte Rite Aid of Alabama, Inc., 768 So.2d 960 (Ala.2000), a case similar to Cackowski in that it involved a claim against a pharmacy, PIC argues that "[t]his Court's prior holdings establish beyond question that a pharmacy is a healthcare provider subject to the AMLA." (Petition at p. 5.) However, for the reasons explained above, it is not a person's or corporation's occupation or type of business that determines whether the AMLA applies, it is whether that person or corporation was used by a physician, dentist, or hospital in delivering health-care services to a patient.
Moreover, although PIC argues that, under Cackowski and Rite Aid, the relationship that must be analyzed to determine whether the AMLA applies "is that between the pharmacy and the overall healthcare system, the `inextricable link' to *1150 the delivery of healthcare created by the activities of the pharmacists, namely, dispensing medication," it fails to recognize that, unlike the pharmacies in Cackowski and Rite Aid, it was not merely "dispensing" medication. (Petition at p. 12.) The pharmacies in Cackowski and Rite Aid were dispensing drugs to specific individuals after those individuals presented the pharmacies with prescriptions written by their physicians. PIC, in contrast, was producing its version of a generic drug and then selling and shipping bulk orders of that drug to physicians to use in their practice with any individuals who might appear seeking treatment. This distinction is an important one.[4]
PIC also argues that a decision by this Court affirming the orders of the Mobile Circuit Court and the Conecuh Circuit Court denying PIC's various motions would be contrary to our previous holding in Wilson v. American Red Cross, supra. In Wilson, a patient sued the Red Cross after he contracted hepatitis as a result of a blood transfusion for which the Red Cross had supplied the blood. 600 So.2d at 217. The Red Cross had collected, processed, and distributed the tainted blood to the hospital for the hospital to use as needed before this particular patient went to the hospital to obtain treatment; however, this Court nevertheless held that the Red Cross was an "other health care provider" and that the patient's action was accordingly subject to the AMLA. 600 So.2d at 218-19. PIC argues that its actions in producing and distributing the betamethasone to physicians, before the patients who would ultimately receive the medication visited those same physicians for treatment, are substantially similar to the actions of the Red Cross in Wilson and that it should be considered an "other health care provider" on that basis.
However, in Wilson, this Court interpreted the term "employed" in § 6-5-481(8) in the more literal sense and concluded that the Red Cross was "employed" by a hospital because it "was under a contract with the University of Alabama Hospital to supply blood to the hospital." 600 So.2d at 218. PIC has not argued that there was such, a contractual or quasi-employment relationship with the physicians who purchased its betamethasone in the present case, nor is there evidence of such a relationship. PIC's argument is instead based on the "inextricable link" described by this Court in Cackowski, which link we have already determined was not present here. Therefore, Wilson is distinguishable.

III.
PIC has not established that the physicians to whom it sold betamethasone were using PIC to deliver health-care services to their patients. Accordingly, PIC cannot be considered an "other health care provider" for the purposes of these actions, and it is not entitled to the protections afforded health-care providers by the AMLA. Because PIC does not have a clear, legal right to the relief it seeksan order directing the Mobile Circuit Court and the Conecuh Circuit Court to vacate their orders denying PIC's motions for a *1151 change of venue, for a more definite statement, and for a protective order, and to enter an order granting the same motionsthe petition for the writ of mandamus is denied.
PETITION DENIED.
COBB, C.J., and STUART, J., concur.
LYONS and MURDOCK, JJ., concur specially.
LYONS, Justice (concurring specially).
Section 6-5-481(8), Ala.Code 1975, defines "other health care providers" as "[a]ny professional corporation or any person employed by physicians, dentists, or hospitals who are directly involved in the delivery of health care services." (Emphasis added.) In the absence of employment in the context of a contract for the rendition of services, we have found the status of a health-care provider to exist under the alternative definition of "employ" as "to make use of." In that class of cases we have found direct, as opposed to indirect, involvement by reason of the presence of an ensuing chain of events set in motion by the physician and involving the subsequent conduct of the entity seeking status as an "other health care provider." Thus, the pharmacist was both used and directly involved in Cackowski v. Wal-Mart Stores, Inc., 767 So.2d 319, 325 (Ala.2000) ("Accordingly, the physician writes out a prescription, which the patient takes to the pharmacy of his choice to be filled. Although it is the physician who prescribes the medication, it is only a pharmacist/pharmacy that can fill the prescription, by supplying the patient with the called-for medication."). The testing laboratory was both used and directly involved in Anderson v. Alabama Reference Laboratories, 778 So.2d 806, 810 (Ala.2000) ("Similarly, in this case, Dr. Fuller employed, or engaged the services of, ARL to test a sputum specimen of his patient, Mr. Anderson. The purpose of having ARL test Anderson's specimen was directly linked to Dr. Fuller's diagnosis and treatment of Anderson. Thus, ARL's testing of Anderson's specimen was an integral part of Dr. Fuller's delivery of health-care services to Anderson. Therefore, we hold that ARL falls within the AMLA's definition of `other health-care provider.'"). In each instance, the physician using the entity found to be within the definition of "other health care provider" set in motion a chain of events involving the direct participation of the other entity.
PIC argues that the role of the blood supplier recognized as being within the definition of "other health care provider" in Wilson v. American Red Cross, 600 So.2d 216 (Ala.1992), is indistinguishable from the role PIC played. PIC distributed betamethasone; the blood supplier furnished blood. No ensuing chain of events involving the subsequent conduct of another entity was set in motion by the physician administering betamethasone or giving a blood transfusion. But, as the main opinion points out, there existed in Wilson a contract of employment for the rendition of services between the blood supplier and the hospital. See Wilson, 600 So.2d at 218 ("The record in the instant case reveals that when Wilson received the allegedly defective blood, the Red Cross was under a contract with the University of Alabama Hospital to supply blood to the hospital. The record further reveals that the activities of the Red Cross are highly technical and require supervision and participation by a physician and other trained technical personnel. Based on this evidence, we conclude that the Red Cross is employed by the hospital and that the Red Cross is directly involved in the delivery of health care services."). Distribution of blood for the purpose of transfusions is "declared not to be a sale of such whole blood, *1152 plasma, blood products, blood derivatives, or other human tissues." Ala.Code 1975, § 7-2-314(4). As this Court held in American National Red Cross v. ASD Specialty Healthcare, Inc., 888 So.2d 464, 466 (Ala. 2003): "Thus, those `furnishing,' `distributing,' or `procuring' blood products provide a service, and that service does not constitute a sale." (Footnote omitted.) Providing such a service under a contract of employment supplies the requisite direct involvement. Here, PIC manufactures a product; it is not employed to render a service. As a manufacturer, it must stand or fall on those cases applying the alternative definition of "employ" as "to make use of" and the concomitant requirement of establishing itself as an actor in an ensuing chain of events set in motion by the physician. Because it has not offered such evidence, it cannot be deemed to fall within the definition of "other health care provider" set forth in § 6-5-481(8).
MURDOCK, J., concurs.
NOTES
[2] The actions filed in Jefferson County have been transferred to Shelby County on PIC's motion.
[3] The AMLA provides in § 6-5-546, Ala.Code 1975, that actions brought thereunder "must be brought in the county wherein the act or omission constituting the alleged breach of the standard of care by the defendant actually occurred." Section 6-5-551 provides that "[t]he plaintiff shall include in the complaint filed in the action a detailed specification and factual description of each act and omission alleged by plaintiff to render the health care provider liable to plaintiff" and that "[a]ny party shall be prohibited from conducting discovery with regard to any other act or omission or from introducing at trial evidence of any other act or omission." Sections 6-5-545 and -548 contain further restrictions on the scope of discovery in AMLA actions.
[4] We note that the plaintiffs have argued that PIC was not, in fact, acting as a pharmacy when it produced and distributed the betamethasone alleged to have caused their injuries. Rather, they argue, PIC was acting as a manufacturer, wholesaler, or distributor pursuant to the business license it also held authorizing it to engage in those activities. However, we need not make a conclusive determination as to whether PIC was acting as a pharmacy, manufacturer, wholesaler, or distributor; it is sufficient to conclude that PIC was not employed by the physicians who purchased the PCI-produced betamethasone to deliver health-care services to their patients.